# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CATHALENE JOHNSON,** | : | Civil No. 1:12-CV-444 |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **FEDERAL EXPRESS CORPORATION,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION AND ORDER

**I.     Statement of Facts and of the Case**

This case comes before the court for resolution of a discovery dispute regarding whether the plaintiff's medical records are properly subject to disclosure and inspection by counsel for the defendants. For the reasons set forth below, we find that the allegations in the plaintiff's complaint put her medical condition at issue in this case, and, therefore, require disclosure of these records to defense counsel. However, in recognition of the privacy interest implicated by medical records, we will place reasonable limitations on the further dissemination of these records by defense counsel in the course of this litigation.

The pertinent facts relating to this discovery dispute can be simply stated. The plaintiff, Cathalene Johnson, has filed a complaint against the defendant, Federal Express Corporation, (Fed Ex) alleging that Fed Ex discriminated against her in her

employment with that company based upon her gender and race. (Doc. 1.) Included among Johnson's prayers for relief is a demand for damages based upon emotional pain and suffering and the loss of enjoyment of life, elements of damage that go directly to the plaintiff's physical and emotional state at the time of the events set forth in her complaint. (Id.)

Consequently, Fed Ex, through its counsel, has sought access to the treatment records of Johnson's primary care physician and endocrinologist in discovery in order to determine whether those records shed light on the extent to which Johnson has exhibited physical and emotional symptoms as a result of the allegedly discriminatory actions of her employer. Johnson has resisted this discovery demand, asserting the physician patient privilege in an effort to avoid disclosure of any of these medical records. The dispute between the parties on this discovery question was then referred to this court for resolution. (Doc. 20.) Following conference calls with counsel, in accordance with case law, Smith v. Cent. Dauphin Sch. Dist., 1:05-CV-01003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007), we directed the plaintiff to provide these records to the court for *in camera* review. (Doc. 21.) We have received those records, and have now completed our *in camera* review of this material.

This *in camera* review reveals that these records contain matters which we deem relevant to the issues in this lawsuit. Specifically, the records contain numerous

reports by the plaintiff to her physicians regarding her general psychological state. In some of these records, Johnson specifically ties her emotional state to stress at her work in ways that are relevant both to the plaintiff's claims, and to Fed Ex's defense of those claims. The records also identify some other chronic medical complaints of Johnson's, complaints which may independently account for some symptoms of stress and fatigue identified by the plaintiff. Further, the records may be relevant in that they may reflect instances in which Johnson did not report any particular emotional or psychological complaints while employed with Fed Ex. Despite their undoubted relevance on these scores, the records are also interspersed with matters of a less relevant, and more personal nature, involving women's health issues and other similar matters. Oftentimes these relevant and non-pertinent matters are interspersed in the records in a way which makes redaction difficult or unwieldy.

Having conducted this review, and made these findings, for the reasons set forth below, we will order the medical records released to defense counsel for defense preparations in this lawsuit, since the records contain relevant information which cannot be reasonably gleaned from the documents through some simple form of redaction. However, in order to preserve Johnson's medical privacy, we will further direct that the contents of these medical records may be used by counsel solely for

preparation of this litigation, and may not be further disclosed to Johnson's supervisors at Fed Ex without prior approval of the court.

## II. **Discussion**

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, the scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

Fed. R. Civ. P., Rule 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding motions to compel are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the

scope of discovery permitted under Rule 26 also rest in the sound discretion of the court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).
>
> Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, valid claims of relevance and privilege still cabin and restrict the court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party seeking discovery bears the initial burden of proving the relevance of the requested information. <u>Morrison v. Philadelphia Housing Auth.</u>, 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." <u>In re Urethane Antitrust Litigation</u>, 261 F.R.D. 570, 573 (D.Kan. 2009).

Furthermore, in the context of a request for access to medical records of a plaintiff in an employment discrimination lawsuit, this court has previously defined

6

for us the standards which control our evaluation of such discovery disputes. In this setting, we have repeatedly held that when a plaintiff puts her mental and emotional health at issue in a civil lawsuit she implicitly waives the protection of the doctor-patient privilege with respect to her medical records. See, e.g., Smith v. Cent. Dauphin Sch. Dist., 1:05-CV-01003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007)(held, when a plaintiff puts her mental health at issue in a civil law suit, however, she impliedly waives the protection of the privilege); Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 135 (E.D. Pa. 2001), citing Sarko v. Penn–Del Directory Co., 170 F.R.D. 127, 130 (E.D.Pa.1997) (holding that "a party waives the privilege by placing her mental condition at issue"); Topol v. Trustees of the Univ. of Pa., 160 F.R.D. 476, 477 (E.D.Pa.1995) ("Having placed her mental state in issue, plaintiff waived any applicable psychotherapist-patient privilege."), Schoffstall v. Henderson, 223 F.3d 818, 823 (8th Cir.2000) (same); Sidor v. Reno, No. 95 Civ. 9588(KMW), 1998 WL 164823, at *2–3 (S.D.N.Y. April 7, 1998) (same); Kerman v. City of New York, No. 96 CIV. 7865(LMM), 1997 WL 666261, at *3 (S.D.N.Y. Oct.24, 1997) (same); Alden v. Time Warner, Inc., No. 94 CIV. 6109(JFK), 1995 WL 679238, at *2 (S.D.N.Y. Nov.14, 1995) (same).

Thus, while courts consistently hold that "[i]t would be unfair to allow plaintiffs to unilaterally determine the amount of harm defendant caused, without

allowing the defendant or the fact-finder to argue, consider and weigh other relevant factors of emotional stress," Sanchez v. U.S. Airways, Inc., 202 F.R.D. 131, 136 (E.D. Pa. 2001), it is also well "recognize[d] that [the] plaintiff has a privacy interest in maintaining the confidentiality of her records of . . . health treatment." Smith v. Cent. Dauphin Sch. Dist., 1:05-CV-01003, 2007 WL 188569 (M.D. Pa. Jan. 22, 2007). Balancing these competing interests, in the exercise of their discretion, courts have directed that medical "records at issue should be disclosed subject to a protective order, [requiring] defendants [to] maintain confidentiality of the records by not disclosing any portion of the contents to anyone other than the court, the attorneys (and their staff) involved in the matter, and expert witnesses; by not releasing any portion of the records to third-parties; by destroying the records at the conclusion of the litigation . . . ; and by not using the information contained in the records for purposes other than prosecuting this lawsuit." Furey v. Wolfe, CIV.A. 10-1820, 2012 WL 877115 (E.D. Pa. Mar. 15, 2012).

This is the approach that we will adopt in the instant case. Finding that the plaintiff's assertions of claims for emotional distress put these medical matters at issue in this litigation, we conclude that the plaintiff has waived any broad claim of privilege. We further conclude that the plaintiff's medical records are relevant to the issues raised by her claims in this lawsuit, and, therefore, direct that the medical

records be provided to defense counsel subject to a protective order requiring defense counsel to maintain confidentiality of the records by not disclosing any portion of the contents to anyone other than the court, the attorneys (and their staff) involved in the matter, and expert witnesses; by not releasing any portion of the records to third-parties, including Johnson's co-workers and supervisors, without prior express approval of the court; by destroying the records at the conclusion of the litigation; and by not using the information contained in the records for purposes other than prosecuting this lawsuit.

### III. <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED as follows:

1. First, the plaintiff's counsel is ORDERED to release the medical records of the plaintiff to defense counsel within 20 days of this order.

2. Second, this disclosure is subject to a protective order requiring defense counsel to maintain confidentiality of the records by not disclosing any portion of the contents to anyone other than the court, the attorneys (and their staff) involved in the matter, and expert witnesses; by not releasing any portion of the records to third-parties, including Johnson's co-workers and supervisors, without prior express approval fo the court; by destroying the records at the conclusion of the litigation; and by not

using the information contained in the records for purposes other than prosecuting this lawsuit.

So ordered this 24th day of April 2013.

*<u>S/Martin C. Carlson</u>*
Martin C. Carlson
United States Magistrate Judge