**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHALENE JOHNSON,** | : | **CIVIL ACTION NO. 1:12-CV-444** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **FEDERAL EXPRESS** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

Plaintiff Cathalene Johnson ("Johnson") filed the above-captioned action

against defendant Federal Express Corporation ("FedEx"), alleging race and sex

discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq.*, as amended ("Title VII"), (2) the Civil Rights Act of 1991, 42 U.S.C.

§ 1981 ("Section 1981"), (3) the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and

(4) the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 951 *et seq.* (the

"PHRA").  Presently before the court in the above-captioned matter are cross-

motions for summary judgment.  (Docs. 67 & 71).  For the reasons that follow, the

court will deny Johnson's motion for partial summary judgment, (Doc. 67), and

grant in part and deny in part FedEx's motion for summary judgment.  (Doc. 71).

**I.    <u>Factual Background & Procedural History</u>**

**A.    Employment**

Plaintiff Cathalene Johnson, an African-American female, was hired by

defendant Federal Express Corporation, an international package delivery

company, on November 7, 1988.  (Doc. 73 ¶ 1; Doc. 92 ¶ 1).  Johnson worked at

FedEx's station in York, Pennsylvania for over 17 years prior to resigning on June

17, 2013.  (Doc. 73 ¶ 1; Doc. 92 ¶ 1).  At its York station, FedEx employs handlers,

service agents, couriers, operations managers, and a senior manager.  (Doc. 73 ¶ 2;

Doc. 92 ¶ 2).  At all times relevant to the complaint, Johnson's job title was Sr.

Service Agent/Non-DOT.  (Doc. 73 ¶¶ 3, 5; Doc. 92 ¶ 5).  Johnson voluntarily left a

courier position in Huntington Beach, California in 1995 or 1996 to take the service

agent position at the York station.  (Doc. 73 ¶¶ 7-8; Doc. 92 ¶¶ 5-8).  At that time,

Johnson understood that "giving up her right to drive a truck for [FedEx] was

mandatory."  (Doc. 92 ¶ 8; Doc. 95 ¶ 4).  As a Non-DOT service agent, Johnson is not

permitted to operate a commercial motor vehicle for FedEx, and Johnson has never

operated any FedEx vehicle from the York station.  (Doc. 73 ¶ 20; Doc. 92 ¶ 20).

For purposes of her race and sex discrimination claims, Johnson uses Craig

Pooler ("Pooler"), a Caucasian male, as her comparator.  (Doc. 73 ¶ 4; Doc. 92 ¶ 4).

FedEx hired Pooler on April 20, 1981, and Pooler is the most senior employee at the

York station.  (Doc. 73 ¶ 4; Doc. 92 ¶ 4).  Pooler's job title is Courier/DOT/CDL,

meaning he is a courier certified by the Department of Transportation to operate a

commercial motor vehicle and has a commercial driver's license.  (Doc. 73 ¶ 4 & n.2;

Doc. 92 ¶ 4).

According to Johnson, Pooler applied for a service agent position in 1997—

Service Assurance Leader ("SAL")—which the management in York awarded him.

(Doc. 95 ¶¶ 8, 10).  Johnson asserts that FedEx initially permitted higher paid

employees, such as couriers, to accept SAL service agent positions as necessary to meet station requirements, (id. ¶ 9), but that FedEx eliminated the SAL position in 2001 and no longer allowed couriers to work indefinitely as service agents. (Id. ¶ 11). Johnson avers that FedEx required couriers in SAL positions to either downbid to the new Service Assurance Agent ("SAA") position or to return to courier duties. (Id.) Pooler did not downgrade to an SAA. (Id. ¶¶ 13-14). Johnson contends that Pooler functions as a service agent yet continues to receive courier pay. (Id.) Johnson asserts that the daily schedule at the York station drafted by operations manager Stacey Bupp listed Pooler as the SAA until March 2012. (Id. ¶¶ 15-16, 25, 74).[1]

### B.   Job Duties

As a Courier/DOT/CDL, Pooler's job description states that he operates company vehicles, provides pick-up and delivery of packages and documents, meets certain internal requirements, and complies with all aspects of the Federal Motor

---

[1] FedEx disputes all facts related to Pooler holding a SAL or SAA position. According to FedEx, "Pooler is a courier and always has been." (Doc. 80 ¶ 10). "Neither Plaintiff nor Pooler was ever classified as a [sic] SALs/SSAs/SAAs. Plaintiff is a service agent and Pooler is a courier." (Id. ¶¶ 11-13). FedEx admits that the SAL position existed, but claims that it was renamed the SAA position. (Id.) FedEx asserts that the SAA position is not related to Johnson's service agent position because Johnson works with customers at the front counter, whereas SAAs work with management. (Id.)

Carrier Safety Regulations.[2]  (Doc. 73 ¶ 23; Doc. 92 ¶ 23).  Pooler attained a Class

"B" commercial driver's license ("CDL") after completing applicable training.

(Doc. 73 ¶ 25; Doc. 92 ¶ 25).  Pooler has since maintained all driving requirements.

(Doc. 73 ¶ 26; Doc. 92 ¶ 26). Johnson does not have a Class "B" CDL and, after her

arrival at the York station, she did not maintain any driving requirements to

operate FedEx vehicles.  (Doc. 73 ¶¶ 25, 27; Doc. 92 ¶¶ 25, 27).

In addition to driving duties, the Courier/DOT/CDL job description states

that couriers "provide related customer service functions," "ensure that packages

conform" to FedEx requirements, and "perform all other related duties as

assigned" by the management.  (Doc. 73 ¶¶ 46-47; Doc. 92 ¶¶ 46-47).  Management

has discretion to assign duties within each station based on customer and business

needs and the knowledge, skills and abilities of the employees.  (Doc. 73 ¶¶ 47-48;

Doc. 92 ¶¶ 47-48).  Under FedEx Policy 4-95, a manager may temporarily assign an

employee to duties outside the scope of his or her normal responsibilities.  (Doc. 73

¶ 49).  However, the parties dispute whether FedEx policy imposes a 90-day limit

upon temporary assignments.  (Id; Doc. 92 ¶ 49).

---

[2] Johnson objects to numerous statements of fact on the grounds that FedEx cited witnesses and documents not disclosed to Johnson in the course of discovery in violation of Federal Rule of Civil Procedure 26.  (See, e.g., Doc. 92 ¶¶ 24, 41, 44-45, 52).  On September 30, 2013, Johnson requested sanctions against FedEx for its failure to disclose by excluding the non-disclosed evidence in summary judgment pursuant to Rule 37.  (Doc. 82).  By the court's memorandum and order dated January 8, 2013 (Docs. 103 & 104), the court denied Johnson's motion to exclude the evidence.  Hence, the court will consider such evidence as necessary herein.

FedEx asserts that Pooler spends 75-80% of his time performing courier-related duties, but Johnson contends that Pooler's courier duties account for less than 30% of his time.  (Doc. 73 ¶ 51; Doc. 92 ¶¶ 4, 49).  As a result, Johnson argues that Pooler does not fall within FedEx's definition of courier because he does not perform courier work a majority of the average work week.  (Doc. 92 ¶ 4; Doc. 95 ¶ 48).  FedEx lists Pooler's duties as: (1) sorting the packages and loading trucks, (2) processing bulk stops and bulk pickup and delivery, (3) pickup and delivery of packages, and (4) coordinating and transporting freight to and from the airport.  (Doc. 73 ¶¶ 50, 62-63).  Johnson alleges that all employees assist with the morning sorting, and that service agents often perform other processing and coordinating duties.  (Doc. 92 ¶¶ 49, 60, 62).

FedEx states that, between 2006 and April 2013, Pooler delivered or attempted to deliver 46,738 packages to 3,282 different addresses.  (Doc. 73 ¶ 52).[3] Pooler also received Safe Driving Awards for each year from 2008 to 2011.  (Id. ¶ 53). Johnson contends that Pooler did not qualify to receive safe driving awards, and should not have received any such awards, because he drove fewer than 100 days per year.  (Doc. 92 ¶ 53; Doc. 95 ¶ 22).  According to FedEx, Pooler generally performs courier duties while assisting other couriers and operates Route 190, which is a baseline service protection route to minimize late deliveries, make bulk pickups and deliveries, and replace defective equipment.  (Doc. 73 ¶¶ 55-56, 58-59).

---

[3] See *supra* note 2.

Johnson disputes the assertion that Pooler has an assigned route.  (Doc. 92 ¶ 36; Doc. 95 ¶¶ 23, 54).  She further alleges that Pooler rarely performs driving tasks and that FedEx transparently assigned additional courier duties to Pooler after the instant action was commenced in March 2012.  (Doc. 92 ¶¶ 55, 57-59; Doc. 95 ¶¶ 23, 54-55, 58-61, 67; Doc. 73 ¶ 59).

FedEx maintains that Johnson's primary duty involved assistance to customers at the front counter of the station and her other duties included CSM audits, new hire training, sorting packages, and running certain reports, such as fuel audit, cash-only customer feedback, and mis-sort reports.  (Doc. 73 ¶¶ 17-18). Johnson disputes FedEx's contention that she worked the front counter "five days a week, eight hours per day."  (Id. ¶ 17; Doc. 92 ¶ 17).  Johnson asserts that she only worked at the front desk occasionally when the three service agents were not available, and that Pooler also covers the front desk as necessary.  (Doc. 92 ¶¶ 17-18; Doc. 95 ¶ 86).  According to Johnson, Pooler presented a list of his responsibilities during his deposition, and almost all of the responsibilities on Pooler's list are service agent duties.  (Doc. 92 ¶ 60).

### C.  Compensation

FedEx classifies each employee into specific categories of employment.  (Doc. 73 ¶ 28; Doc. 92 ¶ 28; Doc. 95 ¶ 3; Doc. 80 ¶ 3).  For compensation purposes, FedEx utilizes a Merit Hourly Job Codes system to further classify employees based on pay grade, job title, and job code; a Merit Hourly Pay Schedule provides minimum and maximum hourly rates based on job codes and external market levels.  (Doc. 73

¶ 29; Doc. 92 ¶ 29).  As a Courier/DOT/CDL, Pooler has the job code R0096 and pay

grade 8K; as a service agent, Johnson had the job code F0026 and pay grade 7I.

(Doc. 73 ¶ 29; Doc. 92 ¶ 29; Doc. 95 ¶ 2; Doc. 80 ¶ 3).

Under FedEx's compensation structure, couriers are paid a higher hourly

rate than service agents.  (Doc. 73 ¶ 22; Doc. 92 ¶ 22).  Prior to her resignation,

Johnson earned $22.16 per hour, which is the maximum hourly rate for her pay

grade.  (Doc. 73 ¶ 30; Doc. 92 ¶ 30).  In comparison, Pooler earns $24.38 per hour.

(Doc. 73 ¶ 32; Doc. 92 ¶ 32).  Management at the York station does not determine

compensation.  (Doc. 73 ¶ 33).  Nevertheless, Johnson contends that local

management may affect compensation by controlling and, in Johnson's view,

manipulating the courier and service agent designations.  (Doc. 92 ¶ 33).

FedEx has a written policy on distribution of overtime hours, requiring that

hours be distributed as equitably as possible based on the employees' ability to

perform the available work.  (Doc. 73 ¶ 39; Doc. 92 ¶ 39).  In accordance therewith,

managements provides separate overtime sign-up sheets for couriers and service

agents, and more senior employees receive the first opportunity to request overtime

hours.  (Id. ¶¶ 39-40).  However, Johnson claims that local management improperly

delegated the power to assign overtime hours to Pooler, which FedEx rescinded

after the complaint was filed in March 2012.  (Doc. 92 ¶ 61; Doc. 95 ¶ 39).  According

to Johnson, Pooler distributed the overtime hours to his friends before any sign-up

sheet was posted and did not properly report overtime hours as assigned.  (Doc. 92

¶¶ 39-40; Doc. 95 ¶¶ 20, 37, 40-45).  Johnson alleges that there was only one overtime

7

sheet for all employees at the York station. (Doc. 92 ¶ 39). Johnson also alleges that York station management told her that she could not work more than seven hours per day or sign up for overtime hours. (Id. ¶ 41; Doc. 95 ¶¶ 32-35). Johnson asserts that she was allowed to earn additional overtime hours in 2012 after the instant action was filed and another service agent was fired. (Doc. 92 ¶ 43). In 2010, 2011, and 2012, Pooler worked 314, 373, and 421.75 overtime hours, respectively, whereas Johnson worked 89.02, 95.07, and 186.71 overtime hours, respectively. (Doc. 73 ¶¶ 40, 42-43, 45; Doc. 92 ¶¶ 40, 42-43).

## D.    Performance

From 2001 to 2011, Johnson received excellent performance review scores ranging from 6.6 to a perfect score of 7.0. (Doc. 73 ¶ 10; Doc. 92 ¶ 10). FedEx never disciplined Johnson during her employment. (Doc. 73 ¶ 11; Doc. 92 ¶ 11).

## E.    Discrimination Claims

Johnson admits that she never personally heard any other employee make a racial slur, but she allegedly "knew" that other employees referred to her as a "nigger."[4] (Doc. 73 ¶ 12; Doc. 92 ¶ 12). Johnson claims that the management did not address her complaints. (Doc. 92 ¶ 12). Johnson alleges that Bupp, Pooler, and other Caucasian co-workers grew up together in York and formed a clique that controls office privileges, including overtime assignments, and excludes

---

[4] Johnson does not identify the source of her knowledge regarding the use of racial slurs at the York station.

Johnson and other women and minority employees from social activities.  (Doc. 95 ¶¶ 7, 17-20).[5]

Johnson never submitted written complaints of race or sex discrimination pursuant to FedEx's two internal procedures.  (Doc. 73 ¶¶ 13-14; Doc. 92 ¶¶ 13-14).  However, Johnson asserts that, in 2000 or 2001, she made verbal complaints to local management without success.  (Doc. 92 ¶ 13).  In 2010, Johnson allegedly submitted a complaint to FedEx's human resources department, but did not receive a response of any kind.  (Id.)

### F.    Procedural History

On May 2, 2011, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  (Doc. 73 ¶ 14; Doc. 92 ¶ 14).  On March 12, 2012, Johnson filed the instant action against FedEx, alleging race and sex discrimination in violation of Title VII, Section 1981, the EPA, and the PHRA.  (Doc. 1).  In accordance with the court's order dated July 25, 2013 (Doc. 61) regarding dispositive motions, Johnson and FedEx filed cross-motions for summary judgment.  (Docs. 67 & 71).  Johnson moves for partial summary judgment solely on her EPA claim for unequal pay.  (Doc. 68).  FedEx seeks summary judgment on all claims for the following reasons: (1) the applicable statute of limitations bars Johnson's Title VII,

---

[5] FedEx disputes Johnson's assertions regarding the workplace environment because "the matters asserted are speculative based on opinions of hourly employees, conclusory allegations, arguments of counsel and otherwise not supported by the record."  (Doc. 80 ¶¶ 7-8, 16-20).

Section 1981, and PHRA claims; (2) FedEx is entitled to judgment as a matter of law on the race discrimination claims under Title VII, Section 1981, and the PHRA; (3) FedEx is also entitled to summary judgment on the EPA claim; and (4) Johnson fails to establish a claim for punitive damages.  (Doc. 72).  The motions are fully briefed and ripe for disposition.

## II.    **Legal Standard**

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A factual dispute is material if it might affect the outcome of the action under applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

The court is permitted to resolve cross-motions for summary judgment concurrently.  InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); see also Irvin v. United Mine Workers of Am. Health & Ret. Funds, No. 05-1072, 2007 WL 539646, at *1 (W.D. Pa. Feb. 15, 2007); 10A CHARLES ALAN WRIGHT ET AT., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998).  When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  FED. R. CIV. P. 56; Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990); see also Strategic Learning, Inc. v. Wentz, No. 05-467, 2006 WL 3437531, at *4 (M.D. Pa. Nov. 29, 2006).

## III.   Discussion

The instant motions for summary judgment raise four main questions for the court's consideration.  First, the court must determine whether the applicable statutes of limitations bar the Title VII, Section 1981, and PHRA claims.  Second, the court must assess whether FedEx is entitled to summary judgment on the race discrimination claims under Title VII, Section 1981, and the PHRA.  Third, regarding the EPA claim, the court must determine whether either party is entitled to summary judgment.  Finally, the court must decide whether Johnson fails to

establish a claim for punitive damages as a matter of law.  The court will address

each question *seriatim*.

### A.    Statute of Limitations

#### i.    Title VII and PHRA

FedEx asserts that Johnson failed to exhaust her administrative remedies in

a timely manner.  Under Title VII, "it shall be an unlawful employment practice for

an employer to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  Prior to bringing a claim

under Title VII, a plaintiff must file a charge of discrimination with the EEOC

within 300 days of an unlawful employment practice.  Id. § 2000e-5(e); Watson v.

Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000).  In the case *sub judice*,

Johnson filed an administrative charge of discrimination on May 2, 2011.  (Doc. 73

¶ 14; Doc. 92 ¶ 14).  In the charge, Johnson alleges that FedEx forced her to accept a

pay cut when she switched from a courier position to a service agent position in

April 1996, and that FedEx assigned Pooler to temporarily assume service agent

duties as a SAL in 1997 while receiving courier pay.  (Doc. 72 at 2; see Doc. 1 ¶¶ 13,

15; Doc. 95 ¶¶ 8-10).  In 2001, when FedEx ordered all couriers undertaking SAL

duties to return to courier duties, the management at the York Station made an

exception for Pooler.  (Doc. 72 at 2; see Doc. 1 ¶ 16; Doc. 95 ¶¶ 11, 13-14).

Management allowed Pooler to continue working as a service agent and earn

courier pay.  (Doc. 72 at 2; <u>see</u> Doc. 1 ¶ 17; Doc. 95 ¶¶ 11, 13-15).  In response, FedEx

argues that this charge is time-barred because Johnson did not file it within 300

days of the discriminatory conduct.  (Doc. 72 at 2).

Under the Lilly Ledbetter Fair Pay Act of 2009 (the "FPA"), an unlawful

employment practice with respect to discrimination in compensation occurs when

(1) a discriminatory decision is adopted, (2) a plaintiff becomes subject to the

discriminatory decision, or (3) the plaintiff is affected by application of the

discriminatory decision, including "each time wages, benefits, or other

compensation is paid."  42 U.S.C. § 2000e-5(e)(3)(A).  Therefore, each paycheck

issued pursuant to a discriminatory decision is a discrete discriminatory act under

Title VII.  <u>See</u> <u>Bazemore v. Friday</u>, 478 U.S. 385, 395-96 (1986); <u>Schengrund v. Pa.</u>

<u>State Univ.</u>, 705 F. Supp. 2d 425, 432 (M.D. Pa. 2009).  The discriminatory decision

at issue here occurred in 2001 when FedEx allowed Pooler to continue operating as

a service agent while receiving higher courier pay.  This decision affected Johnson

with every paycheck because she consistently received less pay than her Caucasian

male comparator until her resignation in June 2013.  (Doc. 91 at 5).

Johnson further argues that the discriminatory paychecks constitute a

continuing violation.  Under the continuing violation doctrine, a discriminatory act

that occurs outside the applicable limitations period may be deemed timely if (1) the

plaintiff demonstrates a pattern of discriminatory acts that are not individually

actionable and (2) the last act occurs within the limitations period.  <u>See</u> <u>Nat'l R.R.</u>

<u>Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 (2002); <u>Mandel v. M & Q Packaging</u>

Corp., 706 F.3d 157, 165-66 (3d Cir. 2013). The doctrine, however, does not apply to discrete and complete discriminatory actions; a plaintiff may not use the continuing violation doctrine to connect untimely actionable claims to a related timely claim. Mikula v. Allegheny Cnty. of Pa., 583 F.3d 181, 186 & n.3 (3d Cir. 2009); see also Morgan, 536 U.S. at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."). Therefore, a plaintiff may recover only for each discriminatory paycheck received within the statute of limitations. Mikula, 583 F.3d at 186 (citing Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1027-29 (7th Cir. 2003)); Schengrund, 705 F. Supp. 2d at 432-33 (noting that plaintiffs may also recover back pay for up to two years prior to the earliest paycheck received within the statute of limitations under the FPA). Accordingly, Johnson's Title VII claims for employment discrimination with respect to compensation is timely only for paychecks received after July 6, 2010.

Regarding Johnson's PHRA claims, the Third Circuit has held that the PHRA is treated as "identical to federal anti-discrimination laws" except as otherwise specified. Schengrund, 705 F. Supp. 2d at 438 (quoting Fogleman v. Mercy Hosp. Inc., 283 F.3d 561, 567 (3d Cir. 2002)). Specifically, for employment discrimination claims, "[e]mployer liability under the [PHRA] follows the standards set out for employer liability under Title VII." See Knabe v. Boury Corp., 114 F.3d 407, 410 n.5 (3d Cir. 1997); see also Schengrund, 705 F. Supp. 2d at 438 (applying Title VII standards for employer liability to PHRA claims asserted after the

14

enactment of the FPA).  Therefore, each paycheck issued pursuant to FedEx's

discriminatory decision to make an exception for Pooler is independently and

equally actionable under the PHRA.  For the aforementioned reasons, however,

only those paychecks issued after July 6, 2010 are timely under the applicable

statute of limitations.

> ii.      **Section 1981**

FedEx argues that a two-year statute of limitations bars the Section 1981

claim.  (Doc. 72 at 2-3).  In Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004),

the Supreme Court concluded that a four-year statute of limitations applies to

Section 1981 claims made possible by the Civil Rights Act of 1991.  Id. at 382-83; see

28 U.S.C. § 1658 (providing a catch-all four-year statute of limitations for a "civil

action arising under an Act of Congress enacted after" Dec. 1, 1990).  Section 1981,

born of the Civil Rights Act of 1866, protected the right to make and enforce

contracts, including contracts of employment, but it did not protect against

harassing or discriminatory conduct that occurred after the formation of the

contract.  See Jones, 541 U.S. at 372-73 (citing Patterson v. McLean Credit Union,

491 U.S. 164 (1989)).  The Civil Rights Act of 1991 extended the protections of

Section 1981 to harassing and discriminatory conduct during the contract.  Id. at

372-73, 383.  In Jones, the Court concluded that the plaintiffs' race discrimination

claims against their employer arose under the Civil Rights Act of 1991 and were

therefore subject to a four-year statute of limitations pursuant to 28 U.S.C. § 1658.

Id. at 383.

Applying the *ratio decidendi* of <u>Jones</u>, Johnson could not bring claims for race discrimination under Section 1981 prior to the enactment of the Civil Rights Act of 1991.  Consequently, Johnson's Section 1981 claim is subject to a four-year statute of limitations.  See <u>McGovern v. City of Phila.</u>, 554 F.3d 114, 116 (3d Cir. 2009); <u>Bates v. Tandy Corp.</u>, 186 F. App'x 288, 292 (3d Cir. 2006) (stating that "an action for race discrimination must be brought within four years of the treatment alleged to be discriminatory"); <u>Riley v. Del. River & Bay Auth.</u>, 457 F. Supp. 2d 505, 512-13 (D. Del. 2006) (finding that plaintiff's hostile environment claim against employer under Section 1981 had a four-year statute of limitations).

In the instant case, the alleged discriminatory acts took place between 1996 and 2001.  (Doc. 72 at 2).  Johnson did not file the complaint until March 12, 2012, long after the expiration of the four-year statute of limitations.  (Doc. 1).  Johnson asserts that her Section 1981 claim is preserved due to equitable tolling because FedEx actively misled Johnson regarding her cause of action.  (Doc. 91 at 6). Equitable tolling is appropriate to extend the statute of limitations in employment discrimination cases if "(1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." <u>Miller v. Beneficial Mgmt. Corp.</u>, 977 F.2d 834, 845 (3d Cir. 1992) (internal quotations and citation omitted).  A defendant actively misleads the plaintiff when the defendant's "own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights," but the acts or omissions need not be

16

"egregious acts of active deception." <u>Miller</u>, 977 F.2d at 845 (quoting <u>Meyer v. Riegel</u>

<u>Prods. Corp.</u>, 720 F.2d 303, 307 (3d Cir. 1983)); <u>see</u> <u>Ruehl v. Viacom, Inc.</u>, 500 F.3d

375, 384 (3d Cir. 2007) (stating that the plaintiff must demonstrate that "(1) the

defendant actively misled the plaintiff . . . *and* (2) this deception *caused* the

plaintiff's non-compliance with the limitations provision.") (internal quotations and

citation omitted).

Johnson alleges that she first complained to the management at the York

station in 2000 or 2001 because Pooler was permitted to continue working as a

service agent and collect higher courier pay.  (Doc. 91 at 6-7; <u>see</u> Doc. 92 ¶ 13).

Johnson argues that FedEx management failed to disclose internal rules regarding

temporary assignments, which restrict such assignments to a 90-day period, and

courier qualifications, requiring couriers to perform courier activities for the

majority of hours worked.  (Doc. 91 at 7).  As a result of management's failure to

disclose, Johnson was purportedly unaware that Pooler "enjoyed an exception in

violation of FedEx rules."  (<u>Id.</u>)  Consequently, she could not pursue this action in

compliance with the statute of limitations.  (<u>Id.</u>)

The court rejects this argument for two reasons.  First, a defendant does not

actively mislead a plaintiff by mere silence.  <u>Wood v. Carpenter</u>, 101 U.S. 135, 143

(1879); <u>Lewicki v. Washington Cnty., Pa.</u>, 431 F. App'x 205, 208 (3d Cir. 2011); <u>Poskin</u>

<u>v. TD Banknorth, N.A.</u>, 687 F. Supp. 2d 530, 551 (W.D. Pa. 2009) ("[I]naction or

silence by [defendant] is not sufficient to show fraudulent concealment to toll

equitably the limitations period.").  Moreover, Johnson does not does not set forth

17

facts to show that the management actively misled her regarding her cause of action.  Although management considered Pooler to be a valued employee, (Doc. 92 ¶¶ 12-13), Johnson does not allege that the management misrepresented its utilization of Pooler as a service agent or his compensation.  See Snyder v. United States, 260 F. App'x 488, 493-94 (3d Cir. 2008) (holding that IRS misconduct for failing to release liens did not actively mislead plaintiffs as to their damages claim or prevent them from filing suit in a timely fashion); Getchey v. Cnty. of Northumberland, 120 F. App'x 895, 899 (3d Cir. 2005) (finding that defendant's warnings about the consequences of disclosing the injuries did not mislead plaintiff about availability of a cause of action because defendant never denied that the injuries occurred).

Second, equitable tolling is not an excuse for ignorance; a plaintiff must show that he or she could not have discovered the essential information bearing on the claim by the exercise of reasonable diligence.  Ruehl, 500 F.3d at 384.  Johnson knew that Pooler received the SAL assignment in 1997 as a courier, and that Pooler did not downgrade to a SAA position or return to courier duties in 2001 when the SAL assignments were eliminated.  (Doc. 95 ¶¶ 8-16).  Despite her awareness of these facts, Johnson did not examine FedEx rules regarding the position changes, nor did she undertake any investigation into a possible pay discrepancy.  See Hart v. J.T. Baker Chem. Co., 598 F.2d 829, 833-34 (3d Cir. 1979) (denying equitable tolling because employee's "suspicions [of gender discrimination] were sufficient to lead a reasonable person to inquire further into the reasons for her discharge" even

18

though employer gave four non-gender reasons for discharge).  Management's

failure to disseminate available information does not excuse Johnson's failure to

exercise reasonable diligence regarding her cause of action.  Therefore, the court

holds that equitable tolling is inappropriate in this case.

Johnson also argues that her Section 1981 claim is timely because the very

nature of pay discrimination constitutes a continuing violation.  (Doc. 91 at 6); see

Grigsby v. Kane, No. 1:CV-99-2083, 2005 WL 348303, at *7 (M.D. Pa. Feb. 2, 2005)

(stating that the continuing violations doctrine is equally applicable to Section 1981

claims as it is to Title VII claims).  As the court previously discussed, each paycheck

issued pursuant to a discriminatory decision is a discrete and complete

discriminatory act for which a claim may be brought.  See 42 U.S.C. § 2000e-

5(e)(3)(A); Bazemore, 478 U.S. at 395-96; Schengrund, 705 F. Supp. 2d at 432.

However, the continuing violation doctrine applies only to a pattern of

discriminatory acts that are not individually actionable; this doctrine is inapplicable

when there are discrete, actionable discriminatory acts.  See Mikula, 583 F.3d at 186

& n.3.  Accordingly, Johnson's claim for race discrimination pursuant to Section

1981 may proceed, but its reach is limited to each paychecks received after March

12, 2008, within the ambit of the applicable four-year statute of limitations.  See

Riley, 457 F. Supp. 2d at 513 (considering whether discrete acts of racial

discrimination, such as inadequate pay, occurred within the four-year statute of

limitations for a Section 1981 claim).

B.     **Race Discrimination in Violation of Section 1981, Title VII, and the PHRA**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, FedEx moves for summary judgment on Johnson's race discrimination claims under Title VII, Section 1981, and the PHRA.[6]  The court analyzes all three race discrimination claims under the three-step burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999).  First, a plaintiff must establish a *prima facie* case of discrimination by sufficient evidence, direct or circumstantial, that: (1) he or she was a member of a protected class; (2) he or she was qualified for the position for which he or she applied; (3) he or she suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of racial discrimination.  McDonnell Douglas, 411 U.S. at 802; Jones, 198 F.3d at 410-11; Cunningham v. Penn Nat'l Holding Corp., No. 1:08-CV-0587, 2010 WL 456817, at *2 (M.D. Pa. Feb. 2, 2010).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate one or more legitimate, non-discriminatory reasons for its employment decision.  See McDonnell Douglas, 411 U.S. at 802; Jones, 198 F.3d at 410; Cunningham, 2010 WL 456817, at *2.  The plaintiff must then prove that the

---

[6] The court notes that FedEx does not move for summary judgment with respect to the merits of Johnson's sex discrimination claims under Title VII and the PHRA. (See Doc. 1 ¶¶ 21-24).  Accordingly, as the court previously held, the claims for employment discrimination on the basis of sex will proceed to trial for discriminatory acts taking place after July 6, 2010.

defendant's reasons for the employment decision were a mere pretext for discrimination.  See McDonnell Douglas, 411 U.S. at 804-05; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993); Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994); Jones, 198 F.3d at 410; Cunningham, 2010 WL 456817, at *2.

> ### i.    *Prima Facie* Case

FedEx alleges that Johnson fails to establish a *prima facie* case for race discrimination because (1) she did not suffer an adverse employment decision and (2) there are no circumstances giving rise to an inference of racially discriminatory action.  The court will address each of these issues below.

> ### a.    Adverse Employment Action

An adverse employment action occurs when the defendant "fail[s] or refuse[s] to hire or to discharge any individual, or otherwise . . . discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1); see Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004).  An adverse employment action thus refers to a material alteration in the conditions of employment.  See Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998); Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (stating that the employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment") (internal quotations and citation omitted).

FedEx contends that Johnson fails to identify an adverse employment action because she was paid commensurate with the hourly rate for service agents, she

received nearly perfect performance reviews without any disciplinary action, and she voluntarily resigned.  (Doc. 72 at 12; <u>see</u> Doc. 73 ¶¶ 1, 10-11, 30; Doc. 92 ¶¶ 1, 10-11, 30).  Johnson asserts that she suffered an adverse employment action in 2010 when FedEx ignored her request for a pay raise to gain parity with Pooler.  (Doc. 91 at 16 n.8; <u>see</u> Doc. 92 ¶ 13).  The court notes that "paying an individual a lower salary for discriminatory reasons can be an adverse employment action." <u>Cunningham</u>, 2010 WL 456817, at *3 (quoting <u>Sherrod v. Phila. Gas Works</u>, 57 F. App'x 68, 73 (3d Cir. 2003)).  Johnson presents significant evidence that FedEx management at the York station allowed Pooler, a Caucasian male, to garner higher pay for similar work and did not extend this opportunity to her, an African-American female.  (Doc. 91 at 7; Doc. 95 ¶¶ 8-16).  Although FedEx denies receiving any complaints or requests from Johnson, (Doc. 73 ¶¶ 13-14), the court must construe the facts in the light most favorable to Johnson as the opposing party. Accordingly, the court finds that Johnson sets forth sufficient evidence that she suffered an adverse employment action.

### b.    Inference of Racial Discrimination

The "precise elements of a plaintiff's *prima facie* case may vary with the particular circumstances." <u>Waldron v. SL Indus.</u>, 56 F.3d 491, 494 n.3 (3d Cir. 1995). Accordingly, a plaintiff can satisfy the fourth element of a *prima facie* case in a variety of ways.  An inference of racial discrimination may arise when "similarly situated persons who are not members of a protected class [a]re treated more favorably." <u>Kimble v. Morgan Props.</u>, 241 F. App'x 895, 898 (3d Cir. 2007).

Similarly-situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002); see Red v. Potter, 211 F. App'x 82, 84 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical") (internal citation omitted).

In the instant case, when viewing the evidence in the light most favorable to Johnson, the evidence is sufficient to require a factfinder to "resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  There is no dispute that Johnson's salary was lower than Pooler's salary.  (Doc. 73 ¶¶ 22, 30, 32; Doc. 92 ¶¶ 22, 30, 32).  FedEx argues, however, that Pooler was not similarly situated to Johnson because he is a courier and Johnson was a service agent; Pooler and Johnson held different job classifications with different job descriptions and therefore different pay grades.  (Doc. 72 at 12-13).  Although Pooler and Johnson had different job classifications, a dissimilarity in classifications is not necessarily determinative of a discrimination claim.  Johnson asserts that management improperly carved out a special exception for Pooler, allowing him to act as a service agent yet receive the higher pay of a courier.  (Doc. 92 ¶¶ 23, 47).  Thus, Johnson adduces testimony and documentary evidence that Pooler received

preferential treatment from the management, and that Pooler largely performed the same service agent duties that Johnson performed.  (Doc. 91 at 17-18; see Doc. 92 ¶¶ 48-62; Doc. 95 ¶¶ 17-20).

In light of this genuine dispute of material fact, summary judgment at step one of the McDonnell Douglas test is not warranted; the court cannot find as a matter of law that Pooler is *not* similarly situated to Johnson to justify his higher compensation.  See Cunningham, 2010 WL 456817, at *4 (holding that there was a factual dispute as to whether the Caucasian employees with higher salaries were similarly situated when the parties disputed and the record did not establish that certain non-discriminatory factors determined an employee's salary).  The court will proceed with its review of steps two and three of the McDonnell Douglas analysis.  See id. (stating that ruling upon a motion for summary judgment on the first step of the analysis would be inappropriate).

### ii.    Legitimate, Non-Discriminatory Reason

A defendant's burden to prove a legitimate, non-discriminatory reason is "relatively light."  Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997).  The defendant need only produce evidence of one or more legitimate reasons, "which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the adverse employment action."  Hicks, 509 U.S. at 507.  FedEx avers that Pooler receives a higher salary because Pooler is a courier and Johnson is a service agent.  (Doc. 72 at 14; see Doc. 73 ¶¶ 3-4, 29).  FedEx relies on a non-discriminatory, objective merit system to establish employee

salaries, which compensates couriers on a higher pay scale than service agents. (Doc. 72 at 14; <u>see</u> Doc. 73 ¶¶ 22, 28-29; Doc. 92 ¶¶ 22, 28-29); <u>see</u> <u>Cunningham</u>, 2010 WL 456817, at *4 (concluding that the application of an established system to set individual employee salaries was a legitimate, non-discriminatory reason for plaintiff's lower salary).

Johnson does not dispute that FedEx utilizes an objective merit system to determine each employee's salary.  Instead, Johnson asserts that the management at the York station improperly circumvented the merit system by classifying as a courier an individual who functions as a service agent.  (Doc. 92 ¶¶ 23, 33).  FedEx counters that Pooler maintained different courier qualifications and spent the majority of his time on courier duties.  (Doc. 73 ¶¶ 23-27, 51).  Clearly, service agent duties assigned to Pooler were well within the management's discretion.  (<u>Id.</u> ¶¶ 46-48; Doc. 92 ¶¶ 46-48).  These legitimate explanations for FedEx's employment action are sufficient to shift the burden to Johnson to show pretext for discrimination.

### iii.    Pretext for Discrimination

A plaintiff may demonstrate pretext by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Fuentes</u>, 32 F.3d at 764; <u>see</u> <u>Cunningham</u>, 2010 WL 456817, at *5.

In the instant matter, Johnson proffers evidence from which the jury could find that FedEx's asserted reasons for paying Pooler a higher salary are false and

that racial discrimination was the motivating factor.  First, Johnson avers that FedEx required her to give up her driving credentials when she became a service agent, but Pooler was allowed to keep his credentials when he was a SAL and later when he acted as a SAA.  (Doc. 92 ¶ 8; Doc. 95 ¶¶ 4, 9, 11-14).  Second, Johnson provides substantial evidence from other employees, including Pooler and current management, that Pooler never spends more than 30% of his time with courier duties, even though FedEx's internal policy requires couriers to expend at least half their time on courier duties.  (Doc. 92 ¶¶ 4, 49, 60).  Third, FedEx's internal policy places limits on management's discretion to make temporary assignments, specifically 90 days.  (Id. ¶ 49).  Nevertheless, a reasonable jury could view the record evidence and conclude that Pooler's temporary assignment to non-courier duties greatly exceeded 90 days.  Finally, with respect to discriminatory motive, Johnson provides testimony from other employees, which, if believed by a reasonable jury, would tend to show that operations manager Bupp, Pooler, and other Caucasian co-workers grew up together in York and formed a clique that controls office privileges, including overtime assignments, and excludes women and minority employees from social activities.  (Doc. 95 ¶¶ 7, 17-20; Doc. 91 at 18).  Johnson also asserts that the clique made derogatory comments in the office, including referring to her as a "nigger."  (Doc. 91 at 17; Doc. 92 ¶ 12).

Although FedEx asserts evidence to the contrary, the court must view the evidence in the light most favorable to Johnson.  Under this standard, there is a genuine dispute of material fact as to whether Pooler was a courier or a service

agent, and whether racial discrimination was a motivating factor in the

management's employment actions.  A reasonable jury could find that FedEx's

stated reasons for paying Johnson less than Pooler were pretextual.  Thus, the court

finds that summary judgment is inappropriate as to Johnson's race discrimination

claims under Section 1981 and Title VII, as well as the PHRA.  See Schengrund, 705

F. Supp. 2d at 438 (stating that the PHRA is "treated as identical to federal anti-

discrimination laws") (citation omitted).

### C.     Unequal Pay in Violation of the EPA

Johnson and FedEx both request summary judgment regarding Johnson's

unequal pay claim.  The Equal Pay Act provides that "[n]o employer . . . shall

discriminate . . . between employees on the basis of sex by paying wages to

employees in such establishment at a rate less than the rate at which he pays wages

to employees of the opposite sex." 29 U.S.C. § 206(d)(1).  The court applies a two-

step burden-shifting test to its analysis of EPA claims.  First, a plaintiff must

establish a *prima facie* case by showing that employees of the opposite sex are paid

differently for performing equal work.  See Stanziale v. Jargowsky, 200 F.3d 101,

107 (3d Cir. 2000).  The burden of persuasion then shifts to the defendant employer

to demonstrate one of four enumerated affirmative defenses: "(i) a seniority system;

(ii) a merit system; (iii) a system which measures earnings by quantity or quality of

production; or (iv) a differential based on any other factor other than sex."  29

U.S.C. § 206(d)(1); see also Stanziale, 200 F.3d at 107 & n.6.  The defendant must

prove its affirmative defense "so clearly that no rational jury could find to the

27

contrary." EEOC v. Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1414 (3d Cir.

1989); see Stanziale, 200 F.3d at 107.

In order to establish a *prima facie* case, the plaintiff must demonstrate that

employees of the opposite sex were paid differently for performing "work of

substantially equal skill, effort and responsibility, under similar working

conditions."[7] See Stanziale, 200 F.3d at 107; see also 29 C.F.R. § 1620.14(a). More

simply, the plaintiff must show that she and her comparator share a "common core

of tasks." Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156 (3d Cir. 1985). This

inquiry does not focus on the title of the position, job classification, or job

description; rather, a plaintiff must prove her case through evidence of actual job

content and work performed. Id. at 155. However, two positions do not share a

common core of tasks when the higher paying position entails additional tasks that

(1) require more skill, effort, or responsibility, (2) consume a significant amount of

time, or (3) provide "economic value [to the employer] commensurate with the pay

differential." Best v. Janerich, 80 F. Supp. 2d 334, 337 (M.D. Pa. 1999); Brobst, 761

F.2d at 156.

Johnson contends that her position is equivalent to Pooler's position, who

earned approximately $20,000 more annually than she earned. (Doc. 68 at 5-6; Doc.

---

[7] "Skill" focuses upon the "experience, training, education, and ability" required for the position, 29 C.F.R. § 1620.15(a), while "effort" measures the physical and mental ability that the employee must possess for the performance of the job. Id. § 1620.16(a). "Responsibility" addresses "the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." Id. § 1620.17(a).

95 ¶¶ 35-36).  Pooler and other FedEx employees testified that Johnson and Pooler

performed substantially identical duties at the York station.  (Doc. 95 ¶¶ 72-92, 97-

98).  However, it is undisputed that Pooler maintains a commercial driver's license

and performs some tasks as a courier that require skills beyond those exercised by

Johnson as a Non-DOT service agent.  Specifically, a courier's duties include

driving a commercial vehicle for pick-up and delivery of packages, re-fueling, or

helping other stranded couriers.  (Doc. 73 ¶¶ 23, 50, 52-53, 55-56, 58-59, 62-63).  In

order to accomplish these tasks, a courier is required to attend training, attain a

commercial driver's license, and maintain driving requirements.  (Id. ¶¶ 24, 26).

Couriers must further obtain a license from the Federal Motor Carrier Safety

Administration.  (Id. ¶ 24).  Thus, a courier clearly must possess greater

qualifications to perform his or her job than a service agent.

Johnson alleges that the additional task of driving FedEx vehicles does not

consume even half of Pooler's time and, under FedEx's internal rules, Pooler

therefore does not qualify as a courier.  (Doc. 92 ¶¶ 4, 49; Doc. 95 ¶ 48).  However,

the amount of time expended is merely one method of establishing additional tasks.

See Best, 80 F. Supp. 2d at 337.  The court concludes that the record evidence of a

separate set of skills required to function as a courier is sufficient to make the

courier and service agent positions unequal.

Johnson further argues that FedEx did not permit her to maintain her

courier qualifications, nor did FedEx evaluate her skills to perform the additional

driving tasks.  (Doc. 92 ¶¶ 8, 21; Doc. 95 ¶ 4).  This argument is unpersuasive as to

her EPA claim.[8]  The court's inquiry into an additional task takes into account only

the qualifications necessary to perform the task, not the specific qualifications of

the employees who occupy the positions.  Puchakjian v. Twp. of Winslow, 804 F.

Supp. 2d 288, 295 (D.N.J. 2011), aff'd 520 F. App'x 73 (3d Cir. 2013).  In other words,

it is not a comparison of the individual abilities of the employees.  As a result of the

court's conclusion that a courier performs additional tasks, Johnson fails to

establish a *prima facie* case that she and Pooler performed substantially equal

work.  The court will grant FedEx's motion for summary judgment and deny

Johnson's motion for summary judgment on the EPA claim.

### D.    Punitive Damages

FedEx moves for summary judgment on Johnson's claim for punitive

damages.  (Doc. 1 ¶ 29(f)).  The court notes that punitive damages are not available

under the PHRA, see Hoy v. Angelone, 720 A.2d 745, 751 (Pa. 1998); Mangan v.

Commonwealth Med. Coll., No. 3:11-CV-2277, 2012 WL 2018270, at *3 (M.D. Pa.

June 5, 2012), but a plaintiff may seek punitive damages under Title VII and Section

---

[8] The court notes that facts establishing substantially equal work for unequal
pay may be relevant to a claim of employment discrimination on the basis of sex.  In
the instant matter, the court's ruling on the EPA claim does not impact the merits
of Johnson's sex discrimination claims under Title VII and the PHRA.

1981.[9]  Mangan, 2012 WL 2018270, at *3; Hanes v. Columbia Gas of Pa., No. 1:07-CV-1706, 2008 WL 3853333, at *5 (M.D. Pa. Aug. 14, 2008).  However, under the Civil Rights Act of 1991, punitive damages are limited to claims of intentional discrimination.  See 42 U.S.C. § 1981a(a)(1).  A plaintiff must demonstrate that the defendant "engaged in a discriminatory practice or discriminatory practices *with malice or with reckless indifference* to the federally protected rights of an aggrieved individual."  Id. § 1981a(b)(1) (emphasis added); see Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999).  The terms "malice" and "reckless" inquire into whether the defendant employer has knowledge that he or she may be acting in violation of federal law, not an awareness that he or she is engaging in discrimination.  See Kolstad, 527 U.S. at 535.

FedEx asserts that Johnson cannot recover punitive damages because she fails to prove that the management at the York station engaged in discrimination with malice or reckless indifference.  (Doc. 72 at 15-16).  In response, Johnson presents evidence that, through its internal investigation, FedEx was aware that Johnson and Pooler performed the same service agent tasks, but Pooler earned higher courier pay, in violation of FedEx's internal rules.  (Doc. 91 at 19-20).  The

---

[9] Punitive damages are only allowed under Title VII where the plaintiff cannot recover pursuant to Section 1981.  Hanes v. Columbia Gas of Pa., No. 1:07-CV-1706, 2008 WL 3853333, at *5 (M.D. Pa. Aug. 14, 2008).  This provision is intended to prevent the "double recovery [by] plaintiffs bringing claims under Title VII and § 1981." Jackson v. Local Union 542, Int'l Union of Operating Eng'rs, 155 F. Supp. 2d 332, 337 n.7 (E.D. Pa. 2001).  However, Johnson is permitted to seek alternative remedies.  Therefore, the court must deal with FedEx's concerns regarding duplicative recovery at trial.  See Hanes, 2008 WL 3853333, at *5.

court finds that this inquiry hinges upon a subjective analysis of "the actor's state of mind."  See Kolstad, 527 U.S. at 535.  Determining an employer's intent or knowledge for its employment actions is a task best relegated to the factfinder.  See Hanes v. Columbia Gas of Pa. Nisource Co., No. 1:06-CV-0328, 2008 WL 3853342, at *9 (M.D. Pa. Aug. 15, 2008); see also Harry v. City of Phila., No. 03-661, 2004 WL 1387319, at *16 n. 24 (E.D.Pa. June 18, 2004) ("Since plaintiff's claim for racial discrimination under Title VII will survive this motion for summary judgment, so too will his claim for punitive damages based on such violation.").

Once a plaintiff makes a showing of "malice" or "reckless indifference" to his federal rights, the plaintiff must also "impute liability for punitive damages" from an individual to the defendant employer.  Id. at 539.  The Supreme Court precludes claims of vicarious liability for punitive damages "where [discriminatory employment] decisions are contrary to the employer's good-faith efforts to comply with Title VII."  Id. at 545 (internal quotation and citation omitted); see Kant v. Seton Hall Univ., 279 F. App'x 152, 158 (3d Cir. 2008).  However, FedEx fails to put forth any evidence regarding its efforts to comply with Title VII in order to avoid vicarious liability.  See Kant, 279 F. App'x at 158 (finding that defendant made good-faith efforts to comply with Title VII with evidence of anti-discrimination policies and a counsel against discrimination).  Therefore, the court will deny FedEx's motion for summary judgment on the claim for punitive damages.

IV.   **Conclusion**

For the above stated reasons, the court will deny Johnson's motion for partial summary judgment (Doc. 67), and the court will grant in part and deny in part FedEx's motion for summary judgment (Doc. 71).  Specifically, the court will grant summary judgment in favor of FedEx and against Johnson on (1) the Title VII and PHRA claims for any and all paychecks issued prior to July 6, 2010, (2) the Section 1981 claims for any and all paychecks issued prior to March 12, 2008, and (3) the EPA claim.  The court will also deny FedEx's motion for summary judgment on the remaining claims of race discrimination and punitive damages.

An appropriate order will issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        February 10, 2014