**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHALENE JOHNSON,** | : | **CIVIL ACTION NO. 1:12-CV-444** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **FEDERAL EXPRESS** | : | |
| **CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM**</u>

Presently before the court are thirteen motions *in limine*—twelve motions by

defendant Federal Express Corporation ("FedEx") (Doc. 63) and one motion by

plaintiff Cathalene Johnson ("Johnson") (Doc. 65)—to exclude various evidence and

testimony at the trial in this matter set to commence on May 5, 2014.  For the

reasons that follow, the court will grant FedEx's motions in part and deny them in

part, and the court will grant Johnson's motion.

**I.    <u>Factual Background and Procedural History</u>**

Plaintiff Cathalene Johnson, an African-American female, was hired by

defendant Federal Express Corporation, an international package delivery

company, on November 7, 1988.  (Doc. 1 ¶ 12).  Johnson left a courier position in

Huntington Beach, California in 1996 to take a service agent position in York,

Pennsylvania.  (<u>Id</u>. ¶¶ 12-13; Doc. 73 ¶¶ 7-8; Doc. 92 ¶¶ 5-8).  Johnson worked at

FedEx's York station as a Sr. Service Agent/Non-DOT for over 17 years prior to

resigning on June 17, 2013.  (Doc. 73 ¶ 1; Doc. 92 ¶ 1).  From 2001 to 2011, Johnson

received excellent performance review scores ranging from 6.6 to a perfect score of 7.0.  (Doc. 73 ¶ 10; Doc. 92 ¶ 10).  FedEx never disciplined Johnson during her employment.  (Doc. 73 ¶ 11; Doc. 92 ¶ 11).

For purposes of her race and sex discrimination claims, Johnson uses Craig Pooler ("Pooler"), a Caucasian male, as her comparator.  (See Doc. 1 ¶ 15).  FedEx hired Pooler on April 20, 1981 as a Courier/DOT/CDL.  (Doc. 73 ¶ 4; Doc. 92 ¶ 4).  According to Johnson, Pooler applied for a service agent position in 1997— Service Assurance Leader ("SAL")—which the management in York awarded him.  (Doc. 1 ¶ 15; Doc. 95 ¶¶ 8, 10).  Johnson asserts that FedEx initially permitted higher paid employees, such as couriers, to accept SAL service agent positions.  (Doc. 95 ¶ 9).  However, FedEx eliminated the SAL position in 2001 and no longer allowed couriers to work indefinitely as service agents.  (Doc. 1 ¶ 16; Doc. 95 ¶ 11).  Johnson avers that FedEx required couriers in SAL positions to either downbid to the new Service Assurance Agent ("SAA") position or to return to courier duties.  (Doc. 1 ¶ 16; Doc. 95 ¶ 11).  Johnson contends that Pooler did not downgrade to an SAA and continues to function as a service agent while receiving courier pay.  (Doc. 1 ¶¶ 16-17; Doc. 95 ¶¶ 13-14).

Under FedEx's compensation structure, couriers are paid a higher hourly rate than service agents.  (Doc. 73 ¶ 22; Doc. 92 ¶ 22).  Prior to her resignation, Johnson earned $22.16 per hour, whereas Pooler earns $24.38 per hour.  (Doc. 73 ¶ 32; Doc. 92 ¶ 32).  Although management at the York station does not determine compensation, (Doc. 73 ¶ 33), Johnson contends that local management may affect

compensation by controlling the courier and service agent designations.  (Doc. 92 ¶ 33).  Johnson also claims that local management improperly delegated the power to assign overtime hours to Pooler.  (Doc. 92 ¶ 61; Doc. 95 ¶ 39).  According to Johnson, Pooler distributed the overtime hours to his friends before any sign-up sheet was posted.  (Doc. 92 ¶¶ 39-40; Doc. 95 ¶¶ 20, 37, 40-45).  In 2010, 2011, and 2012, Pooler worked 314, 373, and 421.75 overtime hours, respectively, whereas Johnson worked 89.02, 95.07, and 186.71 overtime hours, respectively.  (Doc. 73 ¶¶ 40, 42-43, 45; Doc. 92 ¶¶ 40, 42-43).  As a result, Pooler earned approximately $20,000 more than Johnson per year.  (Doc. 1 ¶ 19).

Johnson alleges that former manager Stacey Bupp ("Bupp"), Pooler, and other Caucasian co-workers grew up together in York and formed a clique that controls office privileges, such as overtime assignments, and excludes Johnson and other women and minority employees from social activities.  (Doc. 1 ¶ 16; Doc. 95 ¶¶ 7, 17-20).  Johnson also claims that other employees used racial slurs at the York station.  (Doc. 73 ¶ 12; Doc. 92 ¶ 12).  Although Johnson never submitted written complaints of race or sex discrimination pursuant to FedEx's two internal procedures, she asserts that, in 2000 or 2001, she made verbal complaints to local management without success.  (Doc. 73 ¶¶ 13-14; Doc. 92 ¶¶ 12-14).  In 2010, Johnson allegedly submitted a complaint to FedEx's human resources department, but did not receive a response.  (Doc. 92 ¶ 13).

On May 2, 2011, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC").  (Doc. 73 ¶ 14; Doc. 92 ¶ 14).  On March 12, 2012, Johnson filed the instant action against FedEx, alleging race and sex discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"), (2) the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), (3) the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and (4) the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 951 *et seq.* (the "PHRA").  (Doc. 1).  In accordance with the court's order dated July 25, 2013 (Doc. 61) regarding dispositive motions, Johnson and FedEx filed cross-motions for summary judgment.  (Docs. 67 & 71).  On February 10, 2014, the court granted partial summary judgment in favor of FedEx and against Johnson on (1) the Title VII and PHRA claims for any discriminatory acts prior to July 6, 2010, (2) the Section 1981 claims for any discriminatory acts prior to March 12, 2008, and (3) the EPA claim.  (Doc. 106).  Pursuant to the court's scheduling order dated February 10, 2014, a jury trial is set to commence on May 5, 2014.  (Doc. 107).  The court will presently consider thirteen motions *in limine* to exclude various evidence and testimony at trial.  (Docs. 63, 65).  The motions are fully briefed and ripe for disposition.

## II.   <u>Legal Standard</u>

The court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases."  <u>*In re* Japanese Elec. Prods. Antitrust Litig.</u>, 723 F.2d 238, 260 (3d Cir. 1983), <u>rev'd on other grounds sub nom.</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  A motion *in limine* "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."

<u>Bradley v. Pittsburgh Bd. of Educ.</u>, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, the court may defer ruling on evidentiary issues when the context of trial would provide further clarity. <u>See</u> <u>Japanese Elec. Prods.</u>, 723 F.2d at 260; <u>Leonard v. Stemtech Health Scis., Inc.</u>, No. 08-067-LPS-CJB, 2013 WL 5511420, at *1 (D. Del. Oct. 3, 2013) ("Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."); <u>Frintner v. TruePosition</u>, 892 F. Supp. 2d 699, 707-08 (E.D. Pa. 2012).

The Federal Rules of Evidence govern the admissibility of evidence at trial. All relevant evidence is admissible unless otherwise stated by the Constitution, statute, or other Federal Rules. FED. R. EVID. 402; <u>see</u> also <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 587 (1993) (noting that the "[b]asic standard of relevance [under the Federal Rules of Evidence] thus is a liberal one."). Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence that is not relevant is not admissible. FED. R. EVID. 402.

The court may exclude relevant evidence pursuant to Rule 403, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403; <u>see</u> also <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 379, 382 (2008); <u>Coleman</u>

v. Home Depot Inc., 306 F.3d 1333, 1343-44 (3d Cir. 2002).  The Third Circuit has

cautioned that the exclusion of potentially relevant evidence pursuant to Rule 403 is

an "extreme measure" at the pre-trial stage.   Hines v. Consol. Rail Corp., 926 F.2d

262, 274 (3d Cir. 1991).  Evidence should rarely be excluded *in limine* pursuant to

Rule 403 because "[a] court cannot fairly ascertain the potential relevance of

evidence for Rule 403 purposes until it has a full record relevant to the putatively

objectionable evidence."  *In re* Paoli R.R. Yard PCB Litig., 916 F.2d 829, 859 (3d Cir.

1999).

**III.   Discussion**

    In the instant action, the parties set forth thirteen motions *in limine* for the

court's consideration.  FedEx moves the court to exclude the following types of

evidence from trial: (1) evidence related to time-barred claims under the applicable

statute of limitations; (2) evidence that Johnson was forced to downbid from courier

to service agent; (3) evidence related to race and sex discrimination, including (i) a

conflict between two employees, (ii) racial slurs made by Bupp, (iii) absence of

women and minorities from management, (iv) lunch habits of Caucasian male

employees, (v) overtime for African-American employees, and (vi) discrimination in

the workplace and (vii) in York, Pennsylvania; (4) evidence regarding Bupp's

departure from management; (5) evidence of other employment cases involving

FedEx; and (6) evidence regarding FedEx's net worth.  (Doc. 63).  Johnson requests

that the court preclude FedEx's defense that damages should be reduced on the

basis of after-acquired evidence.  (Doc. 65).  The court will consider these motions

*seriatim*.

### A.    Statute of Limitations

FedEx moves *in limine* to exclude all evidence related to claims barred by the

applicable statute of limitations.  In the case *sub judice*, Johnson alleges that she

took a pay cut when she switched from a courier position to a service agent position

in April 1996, whereas FedEx assigned Pooler to service agent duties as a SAL in

1997 while receiving courier pay.  (Doc. 1 ¶¶ 13, 15).  In 2001, when FedEx ordered

all couriers undertaking SAL duties to return to courier duties, the management at

the York Station made an exception for Pooler and allowed him to continue

working as a service agent and earn courier pay.  (Id. ¶¶ 16-17).  Johnson filed an

administrative charge of discrimination with the EEOC and PHRC on May 2, 2011,

and later filed a complaint with the court on March 12, 2012 for race and sex

discrimination in violation of Title VII, Section 1981, and the PHRA.  (See Doc. 1;

Doc. 73 ¶ 14; Doc. 92 ¶ 14).

In its motion for summary judgment, FedEx argued that the race and sex

discrimination claims are time-barred under the applicable statute of limitations.

(Doc. 72 at 2).  For Title VII and PHRA claims, a plaintiff must file a charge of

discrimination with the EEOC and PHRC within 300 days of the discriminatory

conduct.  See 42 U.S.C. § 2000e-5(e); Watson v. Eastman Kodak Co., 235 F.3d 851,

854 (3d Cir. 2000); see also Knabe v. Boury Corp., 114 F.3d 407, 410 n.5 (3d Cir. 1997)

("Employer liability under the [PHRA] follows the standards set out for employer

liability under Title VII.").  Under the Civil Rights Act of 1991, a plaintiff must bring a Section 1981 claim for race discrimination within the four-year statute of limitations.  Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382-83 (2004); see 28 U.S.C. § 1658 (providing a catch-all four-year statute of limitations for a "civil action arising under an Act of Congress enacted after" Dec. 1, 1990).

However, the Lilly Ledbetter Fair Pay Act of 2009 (the "FPA") allows a plaintiff to assert a claim for discrimination in compensation every time a paycheck is issued pursuant to a discriminatory decision.  See 42 U.S.C. § 2000e-5(e)(3)(A); see also Bazemore v. Friday, 478 U.S. 385, 395-96 (1986); Schengrund v. Pa. State Univ., 705 F. Supp. 2d 425, 432 (M.D. Pa. 2009); Riley v. Del. River & Bay Auth., 457 F. Supp. 2d 505, 513 (D. Del. 2006) (applying the same concept to a Section 1981 claim). In this case, FedEx management allegedly allowed Pooler to continue operating as a service agent while receiving higher courier pay.  As a result of this decision, Johnson continuously received less pay than her Caucasian male comparator until her resignation in June 2013.  Granting in part and denying in part the cross-motions for summary judgment, the court concluded that (1) the Title VII and PHRA claims were timely for paychecks received after July 6, 2010, or within 300 days of the charge of discrimination, and (2) the Section 1981 claim was timely for paychecks received after March 12, 2008, or within four years of the complaint. (Doc. 105 at 12-19; Doc. 106).

FedEx seeks to exclude all evidence that predates the commencement of the applicable statute of limitations on grounds of relevance and unfair prejudice.  (Doc.

64 at 3-4). Importantly, however, the statute of limitations is a defense, not a rule of evidence. Hankin Family P'ship v. Upper Merion Twp., No. 01-1622, 2012 WL 43610, at *10 (E.D. Pa. Jan. 6, 2012) (citing Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 483 (6th Cir. 1987)). "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." United Air Lines v. Evans, 431 U.S. 553, 558 (1977); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (finding that the statute of limitations does not "bar an employee from using the prior acts as background evidence in support of a timely claim").

Johnson alleges that FedEx's decisions from 1996 to 2001 gave rise to her timely discrimination claims. (Doc. 74 at 1-2). FedEx's discriminatory decision to allow Pooler to earn courier pay while working as a service agent affected Johnson "each time wages, benefits, or other compensation [was] paid." 42 U.S.C. § 2000e-5(e)(3)(A). Thus, evidence regarding FedEx's discriminatory decision is clearly relevant to the present issue of whether FedEx management paid Johnson less than Pooler during the applicable limitations period on the basis of race or sex discrimination. See Stewart v. Rutgers, The State Univ., 120 F.3d 426, 433 (3d Cir. 1997) (holding that, although any discrimination claim based on previous tenure denial was time-barred, the events surrounding that denial are relevant to employer's reasons for subsequent adverse employment decision and therefore

9

admissible at trial); <u>Malik v. Quest Diagnostics, Inc.</u>, No. 05CV0085, 2006 WL 6152051, at *2-3 (W.D. Pa. Jan. 24, 2006) (finding that past incidents of discrimination directed at plaintiff are relevant to the issue of defendants' discriminatory motive for plaintiff's termination).

The court also concludes that the probative value of FedEx's allegedly discriminatory decision is not substantially outweighed by the danger of unfair prejudice.  Evidence of FedEx's past decisions does not create a separate mini-trial or increase FedEx's liability for past conduct; instead; it establishes the foundation of Johnson's discrimination claims with respect to compensation.  As the court discussed, the FPA allows Johnson to assert race and sex discrimination claims for each paycheck within the statute of limitations based on past discriminatory decisions.  <u>See</u> 42 U.S.C. § 2000e-5(e)(3)(A).  The logical extension of the instant motion *in limine* would preclude any claims under the FPA by requiring the employer to adopt its discriminatory decision *and* issue paychecks pursuant to the decision within the appropriate statute of limitations.  This is precisely the result that Congress sought to avoid by enacting the FPA in response to <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618, 621 (2007), which held that the pay-setting decision itself triggers the statute of limitations.  <u>See Noel v. The Boeing Co.</u>, 622 F.3d 266, 270-72 (3d Cir. 2010); <u>see also</u> <u>Schengrund</u>, 705 F. Supp. 2d at 432 ("[Plaintiffs] do not need to show that the discriminatory decision to pay them less occurred within [the limitations] period.").  Accordingly, the court will deny FedEx's first motion *in limine*.

### B.    Evidence Regarding Johnson's Downbid to Service Agent

FedEx moves the court to exclude all evidence, testimony, and arguments that Johnson was "forcibly demoted" or "forced to downbid" for lack of relevance and unfair prejudice. (Doc. 64 at 5). Johnson admits that she voluntarily accepted a downbid from courier to service agent in 1996; however, the downbid required her to accept a salary reduction and surrender her ability to drive a truck. (Doc. 74 at 4). Evidence of the downbid is both relevant and probative of Johnson's discrimination claims because Pooler was allegedly permitted to function as a service agent without a reduction in his courier pay and without surrendering the ability to drive a truck. (Id.) The court agrees. The difference in FedEx's treatment of Pooler and Johnson is the foundation of the discrimination claims. Nevertheless, as a result of the parties' agreement that FedEx did not force Johnson to downbid, the court will grant FedEx's second motion *in limine* to preclude any characterization of Johnson's downbid from courier to service agent as a forced demotion or forced downbid.

### C.    Evidence of Race and Sex Discrimination

FedEx seeks to exclude any evidence of race and sex discrimination related to (1) a 2012 conflict between two employees in which racial slurs were allegedly used, (2) Bupp's use of racial slurs outside the York station, (3) the absence of women and minorities from management, (4) discrimination in overtime assignments to other African-American employees, (5) general testimony about

11

discrimination in the York Station, (6) lunch habits of Caucasian male employees,

and (7) race problems and attitudes in York, Pennsylvania.  (Doc. 63).

In race and sex discrimination cases, a plaintiff may establish his or her

claims by either direct evidence that the employer's decision was motivated by

discrimination, or indirect evidence that creates an inference of discrimination.

See Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994); Weightman v. Bank of N.Y.

Mellon Corp., 772 F. Supp. 2d 693, 702 (W.D. Pa. 2011).  When a plaintiff relies upon

indirect or circumstantial evidence to support a discrimination claim under Title

VII, Section 1981, and the PHRA, the court applies the three-step burden-shifting

framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05

(1973).  See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999); Rzucidlo v.

McHugh, __ F. Supp. 2d. __, No. 3:12-CV-380, 2013 WL 5408651, at *5 (M.D. Pa.

Sept. 25, 2013).

First, a plaintiff must establish a *prima facie* case of discrimination by

sufficient evidence that: (1) he or she was a member of a protected class; (2) he or

she was qualified for the position for which he or she applied; (3) he or she suffered

an adverse employment action; and (4) the circumstances of the adverse

employment action give rise to an inference of discrimination.  McDonnell Douglas,

411 U.S. at 802; Jones, 198 F.3d at 410-11; Cunningham v. Penn Nat'l Holding Corp.,

No. 1:08-CV-0587, 2010 WL 456817, at *2 (M.D. Pa. Feb. 2, 2010).

Once the plaintiff establishes a *prima facie* case, the burden shifts to the

defendant to articulate one or more legitimate, non-discriminatory reasons for its

12

employment decision.  See McDonnell Douglas, 411 U.S. at 802; Jones, 198 F.3d at

410; Cunningham, 2010 WL 456817, at *2.  The plaintiff must then prove that the

defendant's reasons for the employment decision were a mere pretext for

discrimination.  See McDonnell Douglas, 411 U.S. at 804-05; St. Mary's Honor Ctr. v.

Hicks, 509 U.S. 502, 507-08 (1993); Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994);

Jones, 198 F.3d at 410; Cunningham, 2010 WL 456817, at *2.  Pretext may be shown

by "such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its actions that a

reasonable factfinder could rationally find them unworthy of credence."  Fuentes,

32 F.3d at 765 (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509,

531 (3d Cir. 1992)); see also Mitchell v. Miller, 884 F. Supp. 2d 334, 369 (W.D. Pa.

2012) ("Evidence suggesting that an employer's stated reasons for an adverse

employment action are unworthy of credence is one form of circumstantial

evidence that a plaintiff can use to establish the existence of intentional

discrimination.").

   As a general matter, evidence of discriminatory conduct in the workplace is

relevant to a key aspect of the case.  Specifically, such evidence may support

Johnson's *prima facie* case of discrimination and also may rebut any legitimate,

non-discriminatory reason FedEx offers for its decision to pay Johnson less than

Pooler as mere pretext for race and sex discrimination.  See Glass v. Phila. Elec.

Co., 34 F.3d 188, 194 (3d Cir. 1994) (finding that evidence of a hostile workplace was

"independently relevant to . . . whether one of the principal non-discriminatory

13

reasons asserted by [defendant] for its actions was in fact a pretext for age or race

discrimination"); Ezold, 983 F.2d at 546 (recognizing that "proof of a discriminatory

atmosphere may be relevant in proving pretext").  Moreover, courts tend to reject

broad evidentiary exclusions in the context of discrimination claims.  As the Eighth

Circuit explained:

> The effects of blanket evidentiary exclusions can be especially damaging
> in employment discrimination cases, in which plaintiffs must face the
> difficult task of persuading the fact-finder to disbelieve an employer's
> account of his own motives . . . .  Circumstantial proof of discrimination
> typically includes unflattering testimony about the employer's history
> and work practices—evidence which in other kinds of cases may well
> unfairly prejudice the jury against the defendant.  In discrimination
> cases, however, such background evidence may be critical for jury's
> assessment of whether a given employer was more likely than not to have
> acted from an unlawful motive.

Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th Cir. 1988); see also Glass, 34

F.3d at 195.  Similarly, the court remains mindful that Rule 403 rulings on

circumstantial evidence of discrimination are best made when the court has the

benefit of the proper context of trial.  In re Paoli R.R. Yard PCB Litig., 916 F.2d at

859.  The court will now address each of FedEx's seven motions in limine related to

evidence of race and sex discrimination below.

### i.    2012 Conflict Between Employees Using Racial Slurs

FedEx asserts that racial slurs allegedly used by other employees are not

admissible for four reasons: (1) such stray remarks were made by non-management

employees, (2) the remarks also constitute hearsay, (3) Johnson does not allege

hostile work environment claims, and (4) Johnson does not have personal

knowledge of the conflict.  (Doc. 64 at 5-6).  The court rejects these arguments.

First, the court finds no reason to exclude discriminatory comments simply

because the comments were made by non-management employees.  The Third

Circuit has stated that "[s]tray remarks by non-decisionmakers or by

decisionmakers unrelated to the decision process are rarely given great weight,

particularly if they were made temporally remote from the date of decision."  Ezold,

983 F.2d at 545.  At most, Johnson may not rely on this evidence alone to

demonstrate discrimination.  See id. at 546-47 (holding that six comments over five

years by an individual not working for employer at the time of the adverse

employment action could not solely support a jury verdict for unlawful

discrimination); see also Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 359 (3d Cir.

1999) (finding that remarks unrelated to the adverse employment action stating

women were unreliable employees were insufficient without more to support a jury

verdict for Title VII gender discrimination); cf. Roebuck v. Drexel Univ., 852 F.2d

715, 733 (3d Cir. 1988) (finding sufficient evidence of discrimination when

temporally remote statements not related to the employment decision were

combined with other evidence).  It is clear that Johnson intends to introduce

testimony and evidence that the use of racial slurs is a normal part of the work

environment at the York station and reflects, at minimum, management's callous

indifference to racial prejudice toward Johnson.  (See Doc. 74 at 5, 7-8).

15

Second, the racial slurs are not inadmissible hearsay.  Under Federal Rule of

Evidence 801, hearsay refers to a person's statement that "a party offers in evidence

to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c).

Here, Johnson does not offer the evidence of the racial slurs for the truth of the

statements; rather, she offers the conflict as circumstantial evidence of the work

environment in which the management chose to give preferential treatment to

Pooler over Johnson.  (See Doc. 74 at 5, 7-8).

Third, as the court previously noted, evidence of an employer's "culture" may

constitute circumstantial evidence of discrimination.  Brewer v. Quaker State Oil

Ref. Corp., 72 F.3d 326, 333 (3d Cir. 1995).  In particular, the work environment is

relevant for a factfinder to determine that the FedEx's decision to pay Johnson less

than Pooler gave rise to an inference of discrimination and FedEx's asserted

legitimate, non-discriminatory reasons were merely pretext for discrimination.  See

Antol v. Perry, 82 F.3d 1291, 1302 (3d Cir. 1996); Williams v. Pa. State Police, 481 F.

Supp. 2d 424, 430 (W.D. Pa. 2007) ("[I]t is beyond question that evidence sufficiently

reflecting harassing or discriminating bias is admissible to prove intent or motive,

the existence of a hostile environment and pretext." (citation omitted)).  As such,

Johnson need not allege hostile work environment claims in order to present

evidence of the work environment at the York station.

Finally, the court notes that Johnson must lay a proper foundation at trial

that evidence of the conflict is indeed relevant to and probative of discriminatory

intent.  The court will deny FedEx's third motion *in limine* without prejudice and allow FedEx to renew any objections at trial.

### ii.    *Bupp's Use of Racial Slurs Outside Work*

FedEx argues that the court should exclude evidence that Bupp made racial slurs outside the York station because such evidence is (1) inadmissible hearsay, (2) impermissible character evidence, (3) irrelevant, and (4) unfairly prejudicial.  (Doc. 64 at 7).  First, as the court previously discussed, the racial slurs are not inadmissible hearsay because Johnson offers the racial slurs not to prove their truth, but rather Bupp's motive for giving Pooler preferential treatment over Johnson.  (See Doc. 74 at 7-8).

Second, FedEx asserts that Federal Rule of Evidence 404 bars Johnson from introducing Bupp's use of racial slurs as impermissible character evidence.  (Doc. 64 at 7).  Pursuant to Rule 404(b), evidence of prior bad acts is generally inadmissible to show a person's propensity to engage in certain behavior; however, it may be admissible for other purposes, such as to prove motive, opportunity, intent, preparation, common plan and scheme, knowledge, identity, or absence of mistake or accident.  FED. R. EVID. 404(b).  The Supreme Court has developed a four-part test for assessing the admissibility of prior bad acts, under which the evidence must be (1) offered for a proper purpose under Rule 404(b); (2) relevant to such purpose; (3) not so prejudicial to substantially outweigh the probative value; and (4) accompanied by a limiting instruction, if requested.  See Huddleston v. United States, 485 U.S. 681, 691 (1988); United States v. Davis, 726 F.3d 434, 441 (3d

17

Cir. 2013).  In sum, evidence of prior bad acts is admissible if it has a non-propensity

purpose and also satisfies the same relevancy requirements as other evidence.

Davis, 726 F.3d at 441.

The court concludes that Johnson may introduce evidence that Bupp used

racial slurs on certain occasions to show that he had a discriminatory motive for

treating Pooler more favorably than Johnson.  See Ansell v. Green Acres

Contracting Co., 347 F.3d 515, 521 (3d Cir. 2003) ("[O]ther acts are admissible under

Rule 404(b) in the employment discrimination context for the proper purpose of

establishing or negating discriminatory intent."); Garvey v. Dickinson Coll., 763 F.

Supp. 799, 801 (M.D. Pa. 1991) ("In an employment discrimination case, evidence

that, e.g., the defendant has made disparaging remarks about the class of persons to

which plaintiff belongs, may be introduced to show that the defendant harbors

prejudice toward that group.  Such evidence is often the only proof of defendant's

state of mind, and if it were excluded, plaintiff would have no means of proving that

the defendant acted with discriminatory intent.") (citation omitted).

Similarly, evidence of racial slurs is relevant to Johnson's claims because it

increases the likelihood of an improper, race-based reason for the differential

treatment between Pooler and Johnson.  See Glass, 34 F.3d at 194; Ezold, 983 F.2d

at 546; Garvey, 763 F. Supp. at 801 (finding that evidence of defendant's alleged

sexual harassment of other women tends to show his attitude toward women and

his motive for gender discrimination against plaintiff).  However, incidents which

are too remote in time or too attenuated from Johnson's situation are not relevant.

18

See Garvey, 763 F. Supp. at 801-02.  Accordingly, the court may limit the evidence of Bupp's use of racial slurs to those occasions which involve other employees of FedEx's York station.  See id. (limiting evidence of past sexual harassment to the drama department in which plaintiff worked rather than allowing any and all claims by a member of the faculty).

Finally, although the admission of such evidence is also subject to the balancing requirements of Rule 403, such rulings are best made at the time of trial when the court may consider all relevant information.  See In re Paoli R.R. Yard PCB Litig., 916 F.2d at 859.  The court will deny the fourth motion in limine regarding Bupp's use of racial slurs, but the court will allow FedEx to raise a Rule 403 objection at trial as appropriate.

### iii.    Absence of Women and Minorities from Management

In motion in limine no. 6, FedEx seeks to exclude evidence regarding the absence of women and minorities from York management because Johnson does not assert a disparate impact claim, and such evidence will force FedEx to litigate its hiring practices and every complaint made by female and minority employees. (Doc. 64 at 8).  Although Johnson does not assert a discrimination claim based on the lack of female or minority managers, she argues that such evidence is relevant

to establish the race and sex of the management who subjected her to disparate treatment.  (Doc. 74 at 11-12).  The court agrees.[1]

In <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204 (3d Cir. 1995), the Third Circuit held that "[e]mployment discrimination plaintiffs are not precluded from introducing statistical evidence of discrimination in a disparate treatment case."  <u>Id.</u> at 1217.  However, the court concluded that the incomplete, handwritten charts in that case served "primarily as testimonial aids to describe the employees' positions relative to key decisionmakers" rather than true statistical evidence.  <u>Id.</u>  Similarly, in this case, Johnson does not use statistical evidence to prove her discrimination claim.  Instead, she intends to establish her position in relation to the management at the York station.  The court will allow the evidence only as it relates to managers who participated in the decisions relevant to the allegations of the complaint.  Accordingly, the court will deny FedEx's motion *in limine* without prejudice, but

---

[1] FedEx also argues that the "statistical evidence" regarding women and minorities in management is inadmissible because Johnson does not establish other factors bearing on the relevance or probative value of such evidence, such as the number of women or minorities who applied for management positions.  However, this argument is inapposite.  Cases, such as <u>Sengupta v. Morrison-Knudsen, Co.</u>, 804 F.2d 1072 (9th Cir. 1986), do not exclude statistical evidence.  <u>See id.</u> at 1075-76 ("[A] prima facie case of disparate treatment may be established with a combination of direct, circumstantial and statistical evidence of discrimination." (internal quotations and citation omitted)); <u>Abrams v. Lightolier, Inc.</u>, 50 F.3d 1204, 1217 (3d Cir. 1995).  Rather, the utility of statistical evidence "depends on all of the surrounding facts and circumstances" and courts will generally give less weight to unreliable or incomplete statistics.  <u>Id.</u> at 1075-76 (quoting <u>Int'l Bd. of Teamsters v. United States</u>, 431 U.S. 324, 340 (1977)); <u>see also</u> <u>Sheehan v. Daily Racing Form, Inc.</u>, 104 F.3d 940, 942 (7th Cir. 1997) (refusing to give weight to an expert's statistical evidence regarding correlation of age and retention that failed to explain the omission of other variables).

the court will allow FedEx to assert an appropriate relevance objection consistent with this ruling.

### iv.    *Discrimination at the York Station, Including Overtime Hours of African-American Employees*

In two separate motions *in limine*, FedEx moves to exclude all testimony related to discriminatory actions in the York station, including the treatment of African-American employees in overtime assignments.  FedEx argues that such testimony is speculative, hearsay, and improper opinion testimony.  (Doc. 64 at 10-11).  Moreover, the testimony is not relevant to Johnson's discrimination claims and would confuse the issues before the jury by creating mini-trials.  (Id.)

First, the court presently finds no indication that any witness would testify to matters without personal knowledge.  For example, FedEx asserts that witnesses were asked during their depositions whether the witness believed he or she was not allowed to work overtime.  (Id. at 10).  Any response should be based on the witness's personal knowledge.  Similarly, FedEx does not present any record examples of hearsay in which a witness relayed another person's statement to prove the truth of such statement.

Moreover, opinion testimony by lay witnesses is not prohibited by the Federal Rules of Evidence.  Pursuant to Rule 701, a lay witness may offer opinion testimony if it is rationally based on the witness's perception, helpful to clearly understanding the witness's testimony or determining a fact in issue, and not based

on specialized knowledge. FED. R. EVID. 701. Thus, testimony from employees about their perception of discrimination within the workplace is permissible.

Finally, the court concludes that the treatment of other employees is potentially relevant and probative circumstantial evidence of the discrimination claims. See Becker v. ARCO Chem. Co., 207 F.3d 176, 194 n.8 (3d Cir. 2008) ("[A]s a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination."); Abrams, 50 F.3d at 1214-15 (finding that evidence of employer's treatment of other members of the protected class was probative of employer's discriminatory intent toward plaintiff); Landmesser v. Hazleton Area Sch. Dist., __ F. Supp. 2d __, No. 3:12-CV-0759, 2013 WL 6002171, at *10 (M.D. Pa. Nov. 12, 2013) (finding that a plaintiff may demonstrate pretext by evidence that the employer previously discriminated against plaintiff or other members of plaintiff's protected class, or that employer treated more favorably similarly situated persons not within a protected class). The court will not categorically exclude testimony from other employees about discrimination at the York station prior to trial. Accordingly, the court will deny motions *in limine* nos. 7 and 8 regarding discrimination at the York station, including overtime assignments of other African-American employees, without prejudice to FedEx's right to reassert these objections at trial.

22

### v.    *Lunch Habits of Caucasian Male Employees*

FedEx claims that the dining habits of its employees are not relevant and will only cause unfair prejudice by confusing the issues before the jury. (Doc. 64 at 12). As the court previously discussed, "the [factfinder] may also consider as circumstantial evidence the atmosphere in which the company made its employment decision" to find pretext for discrimination. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 641 (3d Cir. 1993); see also Ezold, 983 F.2d at 546 (stating that evidence of discriminatory atmosphere "add[s] 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff") (citation omitted). At trial, Johnson intends to demonstrate that Bupp, Pooler, and other Caucasian co-workers formed a clique, controlling office privileges and excluding Johnson and other women and minority employees from social activities. (See Doc. 1 ¶ 16; Doc. 74 at 6). Relevant to the instant motion, Johnson alleges that the management dines only with certain Caucasian male employees. (Doc. 74 at 6). As a result, an inference may be drawn that those same employees exercise some degree of influence over the assignment of overtime hours. (Id.) The court does not presently find any Rule 403 prejudice because there is no indication that the introduction of employees' lunch habits would confuse or mislead the jury. However, the court will deny FedEx's ninth motion *in limine* without prejudice and allow FedEx to object to such evidence at trial.

### vi.    *Race Problems and Attitudes in York, Pennsylvania*

In motion *in limine* no. 11, FedEx moves the court to exclude all testimony regarding race problems and attitudes in York, Pennsylvania.  (Doc. 64 at 13).  The court concludes that testimony regarding race problems and attitudes in York, Pennsylvania is not relevant to Johnson's discrimination claims.  There is simply no correlation between general opinions regarding race relations in an entire city and Johnson's claims that management discriminated against her on the basis of race in FedEx's York station.  Accordingly, the court will grant the motion *in limine* to exclude such testimony.

### D.    Evidence Regarding Bupp's Departure from Management

FedEx also seeks to exclude all evidence and testimony regarding former manager Stacey Bupp's change in position from York management to a courier.  (Doc. 64 at 8).  The court notes that Johnson does not oppose the motion to exclude evidence of Bupp's demotion.  (Doc. 74 at 13).  Accordingly, the court will grant FedEx's fifth motion *in limine*.

### E.    Other Employment Cases Involving FedEx

FedEx further alleges that other employment lawsuits involving FedEx, including E.E.O.C. v. Fed. Express Corp. ("Shaub"), No. 1:02-CV-1194 (M.D. Pa. Feb. 26, 2004), appeal dismissed, Nos. 05-1418 & 05-1565 (3d Cir. Mar. 3, 2006), have "no place in this matter."  (Doc. 64 at 12).  In response, Johnson states that she does not currently intend to introduce Shaub, but nevertheless requests that the court await ruling on the issue until trial.  (Doc. 74 at 13).

24

The court notes that FedEx does not set forth a single reason to exclude such employment lawsuits, nor do the parties present any facts regarding Shaub or other employment lawsuits involving FedEx.  The court may deny a motion *in limine* when the motion lacks sufficient specificity for the court to rule on the admissibility of the evidence.  Leonard, 2013 WL 5511420, at *1-2.  Therefore, the court will deny FedEx's tenth motion *in limine* to exclude evidence of other employment cases involving FedEx without prejudice.  FedEx may reassert its objection in the event that Johnson attempts to introduce such evidence at trial.

### F.    FedEx's Net Worth

In its final motion *in limine*, FedEx seeks to exclude evidence of its net worth and revenue at the liability stage of trial as both irrelevant and unfairly prejudicial.  (Doc. 64 at 14).  The court notes that evidence regarding a defendant's assets is relevant to the issue of punitive damages.  See Forsyth v. Kleindienst, 700 F.2d 104, 106 (3d Cir. 1983); Rahemtulla v. Hassam, No. 3:05-0198, 2008 WL 2247195, at *4 (M.D. Pa. May 30, 2008); Williams v. Betz, No. CIV. A. No. 93-4426, 1996 WL 114815, at *3 (E.D. Pa. Mar. 14 1996).  Punitive damages may be awarded in cases of employment discrimination when an employer acts "*with malice or with reckless indifference* to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1) (emphasis added); see Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 534 (1999); Williams, 1996 WL 114815, at *3 (citing Jackson & Coker, Inc. v. Lynam, 840 F. Supp. 1040, 1051 (E.D. Pa. 1993)).

However, prior to the court allowing evidence related to a defendant's financial condition, the factfinder must determine "the legal sufficiency of plaintiff's claim, a determination which must be made at trial." Waters v. Genesis Health Ventures, Inc., 400 F. Supp. 2d 808, 813 (E.D. Pa. 2005). In short, evidence of defendant's financial condition is not relevant until the factfinder concludes that the defendant's intentional conduct warrants an award of punitive damages. See McGrane v. Shred-It USA, Inc., No. 07-98, 2011 WL 1706777, at *2 (W.D. Pa. May 4, 2011).

Accordingly, the court will grant FedEx's motion *in limine* and preclude Johnson from offering evidence or testimony of FedEx's net worth or revenue in her opening statement or at any other time in the presence of the jury until the jury reaches a verdict awarding punitive damages. See Waters, 400 F. Supp. 2d at 813 (citing Williams, 1996 WL 114815, at *3); McGrane v. Shred-It USA, Inc., 2011 WL 1706777, at *2. If the jury concludes that punitive damages are appropriate, it is entitled to learn the value of the FedEx's assets, net worth, and general financial condition in order to determine the amount of the punitive damages award. See Rahemtulla, 2008 WL 2247195, at *4.

### G.    After-Acquired Evidence

In her motion *in limine*, Johnson requests that the court exclude FedEx's defense that damages should be reduced on the basis of after-acquired evidence. (Doc. 65). In McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352 (1995), the Supreme Court held that an employer may limit damages for employment

discrimination cases by evidence of an employee's wrongdoing acquired after his or her termination.  Id. at 359-63.  "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."  Id. at 362-63.

In this case, prior to her resignation, Johnson admitted to FedEx's counsel during her deposition that she copied several confidential payroll documents from FedEx's computers without the knowledge and consent of FedEx and disclosed the information to the Pennsylvania Human Relations Commission.  (Doc. 66 at 1; Doc. 76 at 1).  Despite her admission of violating internal policy, FedEx took no disciplinary action against Johnson.  (Doc. 66 at 1-2).  In fact, Johnson remained employed at the York station in good standing until she resigned in June 2013.  (Id.; Doc. 76 at 1).  As a result of FedEx's failure to take any action against Johnson, FedEx cannot, as a matter of law, establish that it would have terminated Johnson on the basis of the policy violations.  See McKennon, 513 U.S. at 362-63.  Put simply, absent an adverse employment action premised upon evidence of wrongdoing, such as termination, the after-acquired evidence defense does not apply.  See Russell v. Microdyne Corp., 65 F.3d 1229, 1240 (4th Cir. 1995) (stating that, under McKennon, an employer's decision not to terminate plaintiff after discovery of wrongdoing precludes a defense for after-acquired evidence).

FedEx asserts that it did not terminate Johnson after her admission because Johnson had already filed the instant action and FedEx believed Johnson would file an additional retaliation claim pursuant to 42 U.S.C. § 2000e-3(a). (Doc. 76 at 3). The court finds that a potential retaliation claim does not excuse the failure to take an adverse employment action. In <u>Russell</u>, the Fourth Circuit allowed an employer to assert the after-acquired evidence defense even though the employer did not terminate the plaintiff for fear of a retaliation claim. <u>See</u> <u>Russell</u>, 65 F.3d at 1240. The court explained that the employer faced a difficult decision because the after-acquired evidence defense was not yet established in <u>McKennon</u>. <u>Id.</u> However, in post-<u>McKennon</u> cases, an employer must take an adverse employment action against the plaintiff in order to assert the after-acquired evidence defense. <u>Id.</u> Therefore, the court will grant Johnson's motion *in limine* and preclude FedEx from asserting the after-acquired evidence defense at trial.[2]

---

[2] The court notes that its ruling on the motion *in limine* does not entirely bar evidence of Johnson's policy violation. The court may consider admission of the evidence as long as such evidence is unrelated to the after-acquired evidence defense. <u>See</u> <u>Lapham v. Vanguard Cellular Sys., Inc.</u>, 102 F. Supp. 2d 266, 270 (M.D. Pa. 2000) (finding that the broader holding in <u>McKennon</u> was that an employer's liability for damages arising from discriminatory conduct ceases when the employer has a valid reason for the adverse employment action); <u>see</u> <u>also</u> <u>Wright v. Montgomery Cnty.</u>, No. 96-4597, 2002 WL 265031, at *5 (E.D. Pa. 2002). However, it will be incumbent upon FedEx to establish a reasonable basis for its admission.

**IV.**    <u>**Conclusion**</u>

For all of the above-stated reasons, the court will grant in part and deny in

part FedEx's motions *in limine* (Doc. 63), and the court will grant Johnson's motion

*in limine*.  (Doc. 65).

An appropriate order follows.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:        February 28, 2014