IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CATHALENE JOHNSON**, | : CIVIL ACTION NO. 1:12-CV-444 |
| Plaintiff, | : (Chief Judge Conner) |
| v. | : |
| **FEDERAL EXPRESS CORPORATION**, | : |
| Defendant. | : |

## MEMORANDUM

Plaintiff Cathalene Johnson ("Johnson") filed the above-captioned action against defendant Federal Express Corporation ("FedEx"), alleging race and sex discrimination in violation of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., as amended ("Title VII"), (2) the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), (3) the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and (4) the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. §§ 951 *et seq*. (the "PHRA").  Presently before the court in the above-captioned matter is a motion *in limine* to preclude certain evidence related to Johnson's resignation from FedEx. (Doc. 115).  For the reasons that follow, the court will grant the motion in part and deny it in part.

I.     **Factual Background & Procedural History**

Plaintiff Cathalene Johnson, an African-American female, was employed by defendant FedEx, an international package delivery company, as a Senior Service Agent in FedEx's York, Pennsylvania station for over 17 years.  (Doc. 1 ¶¶ 12-14).

On May 2, 2011, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), alleging that FedEx allowed Craig Pooler, a Caucasian male, to receive higher courier pay while working as a service agent. (Doc. 115, Ex. 1). On March 12, 2012, Johnson filed the instant action against FedEx for race and sex discrimination in violation of Title VII, Section 1981, the EPA, and the PHRA. (Doc. 1). The parties proceeded to discovery and, after the close of discovery, Johnson resigned from her position at FedEx on June 17, 2013. (Doc. 115 at 1; Doc. 118 at 1). The parties subsequently filed cross-motions for summary judgment in August 2013. (Docs. 67, 71). On February 10, 2014, the court granted partial summary judgment in favor of FedEx and against Johnson on (1) the Title VII and PHRA claims for any discriminatory acts prior to July 6, 2010, (2) the Section 1981 claims for any discriminatory acts prior to March 12, 2008, and (3) the EPA claim. (Doc. 106). A jury trial in this action is set to commence on May 6, 2014. (Doc. 107). FedEx presently moves to preclude any evidence regarding Johnson's resignation in anticipation of a motion for leave to amend the complaint for new harassment, constructive discharge, and retaliation claims. (Doc. 115). The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

The court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases." In re Japanese Elec. Prods. Antitrust Litig., 723 F.2d 238, 260 (3d Cir. 1983), rev'd on other grounds *sub nom*. Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574 (1986). A motion *in limine* "is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). However, the court may defer ruling on evidentiary issues when the context of trial would provide further clarity. See Japanese Elec. Prods., 723 F.2d at 260; Leonard v. Stemtech Health Scis., Inc., No. 08-067-LPS-CJB, 2013 WL 5511420, at *1 (D. Del. Oct. 3, 2013) ("Evidentiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."); Frintner v. TruePosition, 892 F. Supp. 2d 699, 707-08 (E.D. Pa. 2012).

**III.  Discussion**

In the instant motion *in limine*, FedEx moves to preclude any and all evidence of Johnson's resignation in preemptive opposition to a motion for leave to amend the complaint. FedEx first argues that Johnson unduly delayed the amendment of her complaint to assert claims for harassment, constructive discharge, or retaliation. (Doc. 115 at 2-3). Second, the additional claims would prejudice FedEx because Johnson did not resign until after the close of discovery. (Id. at 2-3, 5-6). Third, FedEx contends that Johnson cannot establish the elements for each of the additional claims. (Id. at 4-5). Finally, FedEx asserts that Johnson did not exhaust her administrative remedies prior to alleging the additional claims and therefore the court has no jurisdiction over them. (Id. at 6).

In the case *sub judice*, the court need not analyze the parties' arguments as to undue delay, prejudice, and futility in detail because the court lacks jurisdiction over the additional claims. The court cannot exercise its jurisdiction over the additional claims because Johnson has yet to exhaust her administrative remedies. A plaintiff "must exhaust all required administrative remedies before bringing a claim for judicial relief." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) (quoting Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997)). To bring a claim under Title VII, a plaintiff must file a charge of discrimination with the EEOC and procure a notice of the right to sue. Id. Similarly, a plaintiff must file a complaint with the PHRC to bring a claim under the PHRA. Id.; see also Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims."). "[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) (citations omitted). A plaintiff's claim must thus fall "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996). Claims are within the scope of the original charge if "they arise during the pendency of the EEOC investigation, are closely related to conduct alleged in the charge, or are explanations of the original charge." Waiters v. Parsons, 729 F.2d 233, 234 (3d Cir. 1984).

Johnson filed two charges of discrimination with the PHRC and EEOC.  She first submitted a charge of discrimination for race and sex discrimination on May 2, 2011 and received a notice of the right to sue on January 26, 2012.  (Doc. 1 ¶ 4; Doc. 115, Ex. 1).  Pursuant to the right to sue letter, Johnson filed the complaint and commenced the instant action on March 12, 2012.  (Doc. 1).  After her resignation on June 17, 2013, however, Johnson registered a second formal charge of discrimination on December 3, 2013 for harassment, constructive discharge, and retaliation.  (Doc. 118-1, Exs. A-C).  Johnson alleges that, between December 2012 and June 2013, she faced difficulties with her co-workers using racial derogatory words and refusing to work with her.  (Doc. 118 at 4).  Johnson also asserts that she repeatedly sought help from local management who did not respond to her grievances.  (Id.)  The PHRC and EEOC are currently conducting their investigation and have not yet issued a notice of the right to sue.[1]  (Id. at 2-3; Doc. 119 at 1-2).

The court concludes that the new claims do not fall within the scope of the original charge.  The alleged conduct giving rise to the new claims did not occur during the investigation of the original charge of discrimination; rather, the conduct took place almost a year after the EEOC issued a notice of the right to sue.  See

---

[1] The court notes that Johnson requested a right to sue letter from the EEOC on March 21, 2014.  (See Doc. 118-1, Ex. C).  However, FedEx only received notice of the second charge of discrimination from the PHRC on March 20, 2014.  (See Doc. 119-2).  Moreover, the PHRC has scheduled a fact-finding conference with the parties for July 2, 2014, two months after trial.  (See Doc. 119-3).  Thus, it appears that the administrative process for Johnson's second charge is in its infancy.

Green v. Potter, 687 F. Supp. 2d 502, 515-16 (D.N.J. 2009), aff'd *sub nom.* Green v. Postmaster Gen. of U.S., 437 F. App'x 174 (3d Cir. 2011) (rejecting additional retaliation claim based on conduct occurring more than five months after the EEOC concluded its investigation and issued a final decision); cf. Burton v. Pennsylvania State Police, No. 1:11-CV-1968, __ F. Supp. 2d __, 2014 WL 29009, at *12 (M.D. Pa. Jan. 2, 2014) (permitting additional claims based on alleged conduct after filing of the charge of discrimination, but prior to the issuance of right to sue letters); Harman v. York City Sch., No. 12-CV-2033, 2013 WL 3242407, at *4 (M.D. Pa. June 25, 2013) (same); Baur v. Crum, 882 F. Supp. 2d 785, 802 (E.D. Pa. 2012), aff'd, 517 F. App'x 101 (3d Cir. 2013) (holding that plaintiff's retaliation claim included actions taken 45 days after filing of the administrative complaint because such conduct would reasonably be discovered during the course of the investigation).

Johnson contends that the court may still exercise jurisdiction over the new claims because they could reasonably be expected to arise out of the original charge of discrimination. (Doc. 118 at 6). The court rejects Johnson's conclusory assertion. The Third Circuit has established that new claims are closely related to an existing charge when they share a "core grievance." See Waiters, 729 F.2d at 238 (allowing evidence of other retaliatory conduct after the filing of an EEOC charge for retaliation because "the core grievance—retaliation—[was] the same"); Albright v. City of Phila., 399 F. Supp. 2d 575, 584-85 (E.D. Pa. 2005) (holding that retaliatory acts following the filing of plaintiff's second EEOC charge were within the scope of the first charge because retaliation was "at the core" of the allegations contained in

the charge).  Recent case law suggests that claims share a core grievance when the subsequent conduct is another form of or similar to the conduct giving rise to the original charge.  For example, in Burton, the plaintiff alleged in his first charge that his supervisor retaliated against him for filing a negative report by assigning him to a low-rank detail.  Burton, __ F. Supp. 2d __, 2014 WL 29009, at *11.  In his second charge, plaintiff alleged retaliation in the form of an investigation and disciplinary action for filing the first charge.  Id.  In his complaint, however, the plaintiff set forth additional allegations for suspension without pay and constructive discharge, which occurred over a year after the second charge.  Id. at *12.  The court concluded that the core grievance of both charges and the subsequent conduct was retaliation and therefore the scope of the charges encompassed the additional forms of retaliation.  Id.

Unlike Burton, Johnson alleges claims for race and sex discrimination related to compensation in her original charge.  Johnson presently seeks to introduce broader claims of harassment leading to constructive discharge and retaliation for the original charge.  There is no basis to conclude that the alleged retaliatory conduct after the filing of the original charge was merely another form of or related to pay discrimination.  Thus, the pay discrimination claims do not share a core grievance with the new claims for harassment, constructive discharge, and retaliation, and the new claims cannot reasonably be expected to fall within the ambit of the original charge.  Accordingly, Johnson must exhaust her

7

administrative remedies for her second charge of discrimination prior to bringing claims of harassment, constructive discharge, and retaliation.[2]

The court will grant FedEx's motion *in limine* to prevent the introduction of additional claims and any characterization of Johnson's resignation as voluntary, forced, or constructive discharge. However, the exclusion of all evidence related to Johnson's resignation is not appropriate at this time. As the court previously explained, evidence of discriminatory conduct in the workplace <u>may</u> be relevant to support a plaintiff's *prima facie* case of discrimination and also to rebut any legitimate, non-discriminatory reason the defendant offers as mere pretext for race or sex discrimination. (Doc. 110 at 12-14). Thus, the court will consider the relevance of the factual circumstances and reasons for Johnson's resignation with respect to the pay discrimination claims in the context of trial. The court may also issue a limiting instruction to the jury in order to restrict the use of such evidence to the existing claims.

---

[2] The court also notes that allowing new claims for harassment, constructive discharge, and retaliation two weeks prior to jury selection would place an unwarranted burden on the court and cause FedEx substantial prejudice. Claims for harassment, constructive discharge, and retaliation involve distinctly different factual issues, and implicate different burdens and defenses, than claims of race and sex discrimination in compensation. If the court permitted the addition of these new claims, FedEx would be compelled to conduct additional discovery on the specific factual issues related to such claims. Moreover, the court would be remiss if it failed to permit further motions practice to test the legal sufficiency of the new claims and to determine whether there are any disputed material facts. Finally, any amendment to the complaint at this late stage would disrupt the court's trial schedule and cause significant delay in the resolution of the pay discrimination claims set forth in the original charge.

**IV.     Conclusion**

For the above stated reasons, the court will grant in part and deny in part FedEx's motion to preclude evidence regarding Johnson's resignation.  (Doc. 115).

An appropriate order will issue.

                                          /S/ CHRISTOPHER C. CONNER
                                         Christopher C. Conner, Chief Judge
                                         United States District Court
                                         Middle District of Pennsylvania

Dated:        April 24, 2014